## PAPOOSE OIL CO. v. SWINDLER et al.

No. 13881—Opinion Filed March 27, 1923.

Rehearing Denied Dec. 29, 1923.

(Syllabus.)

1. **Appeal and Error—Briefs—Sufficiency—Specifications of Error.**

Where the specifications of error contained in the brief clearly and concisely state errors complained of, and where such errors were included in the assignments of error set forth in the petition in error, there is a substantial compliance with rule 26, although such specifications are not set forth in the same language or in the same order as the assignments in the petition.

2. **Appeal and Error—Review of Equity Case—Necessity for Exception to Findings.**

An exception to the findings of fact made by the trial court is not necessary to present to this court for review the sufficiency of the evidence to sustain the findings and judgment of the trial court in an equity case.

3. **Guardian and Ward—Departmental Oil Lease—Extension Agreement—Validity.**

Where a departmental oil and gas lease was executed by a guardian of a minor in 1907, leasing premises until the majority of the ward, and prior to the minor's reaching her majority the guardian for valuable consideration executed to the lessee an extension agreement extending the term of the lease so long as oil and gas are found in paying quantities, and such lease was approved by the county court, and having been made before the promulgation of rule 9 of this court (47 Okla. xvi), the extension agreement was valid, although the same was executed without notice and without competitive bidding.

4. **Same—Nature of Oil Lease—Execution by Guardian.**

The execution of an oil and gas lease by a guardian of a minor is not a sale of either personal or real estate of the minor so as to bring such transaction under the provisions of the statute governing sales of personal and real estate of minors; but

an oil and gas lease is a contract for the use of the property for the purpose of exploring the premises for oil and gas and to take therefrom those products so long as they are found in paying quantities.

**5. Same—Nature of Property Rights.**

The execution of an oil and gas lease on premises already producing oil is not a sale of either real estate or personal property by the minor within the meaning of the provisions of the statute governing the sale of personal and real estate of minors. The lease does not vest title to the oil and gas in the lessee, no title being vested in such lessee until the substance is reduced to possession by extraction from the earth.

**6. Oil and Gas—Compliance With Lease— "Drilling Through Certain Sand."**

Where a lease provides for a forfeiture unless a well is drilled through a certain sand within a specified time, the lessee is not required to drill below such sand in search of a new sand, but his contract has been complied with when he has drilled through the specified sand.

**7. Same—Acceptance of New Lease—When Effective.**

The acceptance of a new and valid lease from the lessor during the time of the first lease, where the parties intended the new lease to take effect at once, operates as a surrender of the first lease, and the new lease becomes effective immediately.

**8 Same —Extension Agreement —Consideration.**

Where the oil and gas lease provided for 10 per cent. of the oil produced as royalty and the extension lease provided for 12½ per cent., there was sufficient consideration to support the extension agreement.

Error from Superior Court, Okmulgee County; H. R. Christopher, Judge.

Action by James A. Swindler and J. L. Selby against the Papoose Oil Company to cancel lease. Judgment for plaintiffs, and defendant brings error. Reversed and remanded, with directions.

B. C. Conner, Beeman Strong, and Ames, Chambers, Lowe & Richardson, for plaintiff in error.

Calvin Jones, Rainey & Flynn, W. F. Semple, and D. H. Linebaugh, for defendants in error.

Geo. S. Ramsey and R. A. Hefner, amici curiae.

COCHRAN, J. This action was commenced by the defendants in error, plaintiffs below, against the plaintiff in error, defendant below, for the cancellation of certain oil and gas leases held by the defendant.

The plaintiffs insist that the appeal of the defendant should be dismissed because of failure to comply with rule 26 of this court (47 Okla. x). It is our opinion that the brief filed by the defendant is substantially in compliance with rule 26, and where the specifications contained in the brief clearly and concisely state the errors complained of, and where such errors were included in specifications contained in the petition in error, rule 26 has been complied with, although the specifications contained in the brief are not set forth in the same language or in the same order as the specifications in the petition in error.

The defendant challenges the judgment rendered on the ground of the insufficiency of the evidence to support it, and the plaintiffs contend that the findings of fact made by the trial court are conclusive as to the facts, because no proper exceptions were saved to such findings of fact. At the conclusion of the journal entry of judgment, in which the findings of fact and conclusions of law are incorporated, appears the following exception:

"To all of which the defendant excepts and saves his exception and files notice in open court of his intention to appeal to the Supreme Court of Oklahoma."

Reference is made by the plaintiffs to the following cases as authority for the contention that the findings of fact are conclusive unless proper exceptions are saved, to wit: St. Louis Carbon. Co. v. Lookeba State Bank, 59 Okla. 71, 157 Pac. 1046; Allen v. Wildman, 38 Okla. 652, 134 Pac. 1102; Shuler v. Lashhorn (Kan.) 74 Pac. 264. The rule announced in those cases has been applied by this court in all law cases tried without a jury where the findings of fact are made, but has no application to equity cases. The purpose of an exception is to raise an objection to a decision of the trial court upon a matter of law. Section 565, Comp. Stat. 1921, provides as follows:

"An exception is an objection taken to a decision of the court or judge upon a matter of law."

In the case of McDonald, Adm'r, v. Strawn, 78 Okla. 271, 190 Pac. 558, this court said:

"There is no reason for a demurrer to the evidence in an equity case tried before the court or before a jury, or for a motion to direct a verdict, or for a declaration of law by the chancellor as a prerequisite to the review by this court of the whole case, including evidence. * * * But a timely motion for a new trial is necessary

in equity in order that the trial court may have an opportunity to correct its errors on the law and the facts."

We may also say that there is no reason for an exception to findings of fact made by a trial court in an equity case. Such findings are not a decision of the court or judge upon a matter of law, and upon appeal of a case of purely equitable cognizance it is the duty of the court to weigh the evidence and, if after weighing the same it is found that the judgment of the trial court is clearly against the weight of the evidence, to render or cause to be rendered such judgment as the trial court should have rendered. It is not necessary to save an exception to the final judgment in an equity case in order to obtain a review thereof. Nichols v. Board of Com'rs of Weston County, 13 Wyo. 1, 3 Ann. Cas. 543; Koehler v. Ball, 2 Kan. 160; Commercial Bank of Cincinnati v. Buckingham, 12 Ohio St. 402; Board of Com'rs of Wyandotte County v. Arnold, 49 Kan. 279. Such being the case, and in view of the rule of this court that on appeal in a case of purely equitable cognizance this court will weigh the evidence, there can be no necessity for an exception to findings of fact in an equity case. We, therefore, conclude that it is not necessary to save an exception to the findings made by the trial court in order to have the questions of the sufficiency of the evidence to sustain the judgment reviewed by this court, and if the questions are properly presented by motion for a new trial, this court on appeal will review the entire record for the purpose of ascertaining whether the judgment of the trial court is clearly against the weight of the evidence.

The trial court concluded that the extension of the oil and gas leases executed by James Osborn as guardian of Clara and Irene Osborn, minors, to the Ventura Oil & Gas Company on January 30, 1913, was void. In 1907, James Osborn, as guardian of these minors, executed departmental oil and gas leases to the Ventura Oil & Gas Company, which leases provided for a royalty of 10 per cent. of the oil produced and expired upon the minors reaching their majority. The leases contained the following provision:

"It is mutually understood and agreed that this indenture of lease shall in all respects be subject to the rules and regulations heretofore or that may hereafter be lawfully prescribed by the Secretary of the Interior relative to oil and gas leases of the Five Civilized Tribes. * * *"

On April 20, 1908, the Secretary of the Interior promulgated rules and regulations wherein it was provided that in leases like the above the lessees might with the approval of the Secretary of the Interior increase the royalty to 12½ per cent. of the gross proceeds and that the leases would be subject to all the rights, privileges, and conditions of the lease form approved and issued by the Secretary of the Interior on April 20, 1908, which form provided that the lease should continue so long as oil and gas were produced in paying quantities. The Ventura Oil & Gas Company, with the approval of the Secretary of the Interior, entered into the stipulation for the payment of 12½ per cent. royalty, and considered that by so doing, its leases were extended to run so long as oil and gas are found thereon. In 1913, the attorney for the Ventura Oil & Gas Company became doubtful as to the validity of the extensions, and thereupon the Ventura Oil & Gas Company entered into an agreement for the extension of the oil and gas leases for a period so long as oil and gas are found on the premises in paying quantities, and agreeing to pay one-eighth of the oil produced as royalty and to drill an additional well through the sand in which oil was found in the other wells on said lease within 30 days, and a petition was filed in the county court asking for authority to execute such extension agreement. Thereafter an order was made approving the extension leases so executed. The plaintiffs insisted that this extension lease was subject to cancellation, (1) because it was executed in compliance with an order of the county court directing that it be executed to a designated person and for a designated consideration without competitive bidding; (2) that the execution of this lease amounted to a sale either of personal property or real estate, and the statutes of the state require a notice of sale of either personal property or real estate, which was not given; (3) that the new leases provided that an additional well should be drilled, which was not done; (4) that the extension agreement was invalid because it did not take effect until the minors reached their majority and that the county court had no authority to order the execution of leases to become effective at such time; (5) that there was fraud in procuring the extension; (6) that there was no consideration for the extension. The first contention of the plaintiffs is based primarily on the following language used by this court in the case of Winona Oil &

Gas Co. v. Barnes, 83 Okla. 248, 200 Pac. 981:

"Neither the Constitution nor the statutes of this state confer upon the county court any authority to order the sale of a minor's property to a certain party at a designated price."

The language in the above case is not subject to the construction which the plaintiffs seek to give it in connection with these leases, which were executed prior to the promulgation of rule 9 by this court (47 Okla. xvi).

In Duff v. Keaton, 33 Okla. 92, 124 Pac. 291, this court held that the only modification of the common law which authorized the guardian to lease the lands of his ward was that such lease should be with the approval of the county court. Under the common-law rule, neither competitive bidding nor notice nor authority from the county court was a requisite for a valid lease. If we take the quoted portion from the Winona Oil & Gas Company Case without regard to the question being decided by the court, it would still not be subject to the construction which plaintiffs give to it, for it could not be construed as meaning that the guardian could not negotiate a lease contract and submit the same to the county court for approval and that such approval would not be valid. The power of the court is to approve, and not to make a lease, and, in the instant case, the court did not direct the guardian to make a lease to a person designated by the court and for a sum designated by the court, but authorized him to execute the lease which the guardian had negotiated and presented to the court for approval; but the real question under consideration in the Winona Case was the validity of rule 9, and the language used, which has caused the confusion in this case, simply meant that there was nothing in the statutes or Constitution of the state directing the sale of a minor's property to be made upon an order of the court designating the party and the price; and hence the court had authority, there being no statute to the contrary, to prescribe rules governing the execution of leases and requiring public notice and competitive bidding. Had there been a statute to the contrary, the rule would have been invalid; but there being no statute, the rule was held valid.

In Allen v. Midway Oil & Gas Co., 33 Okla. 91, 124 Pac. 296, the oil and gas lease was executed by the guardian before the order appointing him guardian was entered in the county court, and after his appointment he petitioned the county court to approve the lease executed by him, and this lease was sustained by this court under authority of Duff v. Keaton, both decisions being written by Justice Williams, and in view of that fact the case of Tibbens v. Clayton, Equity No. 2809, in the United States District Court for the Eastern District of Oklahoma (not yet officially reported), is of particular weight. In that case, Judge Williams used the following language:

"In Duff v. Keaton, the court held that: 'The statutes of this state are entirely lacking as to any specific provision for the procedure to be followed by the guardian in leasing the lands of his ward for agricultural or grazing or commercial purposes or for exploring for oil or gas,' and that the only restriction thereon was the modification of the common-law rule as to leasing of a ward's land in that the approval of the court was required, neither competitive bidding nor notice nor prior authorization of the court being a preliminary requisite for such a leasing at common law. The guardian, however, not only at common law, but also here, is required to exercise good faith in the making of such lease."

As to the second contention of the plaintiffs, this court held in Duff v. Keaton, supra, that the execution of an oil and gas lease by a guardian was not a sale of realty as contemplated in section 5314, Comp. Laws 1909, and held that the applicable statute in cases of the execution of oil and gas leases by a guardian was that portion of section 5513, Comp. Laws 1909, which provides:

"The probate court may make such other orders and give such directions as are needful for the management, investment, and disposition of the estate and effects, as circumstances require."

But plaintiffs insist that in Duff v. Keaton, the court held that a lease granting oil and gas mining privileges for a term of years is a "chattel real," and whether the lease is considered real estate or personal property, the statutes of Oklahoma prior to the promulgation of rule 9 provided for a sale of either real estate or personal property only after an order had been obtained upon a petition properly filed and with notice given of the hearing, and a sale made upon notice, and with competitive bidding. Although Duff v. Keaton, supra, holds that an oil and gas mining lease is a "chattel real," it also holds the applicable provision of the statute was the above quoted provision of section 5513, Comp. Laws 1909. At the time that case was decided, the statutes contained practically the identical provisions which they now contain relative to the sale

of real estate and personal property, yet that case held that those provisions were not applicable.

Although this court in Re Indian Territory Illuminating Oil Co., 43 Okla. 316, 142 Pac. 997, held that an oil and gas lease was undoubtedly property, and in Treese v. Shoemaker, 80 Okla. 235, 195 Pac. 766, it is stated that an oil and gas lease vests the lessee with "a present vested interest in the land," and in Tupeker v. Deaner, 46 Okla. 328, 148 Pac. 853, and in Bently v. Zelma Oil Co., 76 Okla. 116, 184 Pac. 131, and in Pluto Oil & Gas Co. v. Miller, 95 Okla. 222, 219 Pac. 303, decided January 30, 1923, an oil and gas lease is a conveyance of interest in land, yet those cases are not in conflict with the holding in the Duff v. Keaton Case that the execution of an oil and gas lease is not a sale of real estate, neither does this lease convey the oil and gas in place so as to be a sale of personal property. Kolachny v. Galbreath, 26 Okla. 772, 110 Pac. 902; Frank Oil Co. v. Belleview Gas & Oil Co., 29 Okla. 719, 119 Pac. 260; Priddy v. Thompson (C. C. A.) 204 Fed. 955.

In Howard v. Manning, 79 Okla. 165, 192 Pac. 358, this court said:

"As said by the United States Supreme Court in United States v. Gratiot, 14 Pet. 526, 10 L. Ed. 573, 'The legal understanding of a lease for years is a contract for the possession of land for a determinate period with the recompense of rent.' Reynolds v. Hanna, 55 Fed. 783; Pelton v. Minah Consolidated Mining Co., 11 Mont. 283, 28 Pac. 310. Tiedemann on Real Property, sec. 538, says: 'A lease is a contract between the lessor and lessee, vesting in the latter a right to the possession of the land for a term of years. It becomes an estate when it takes effect in possession.'"

And in the case of Tibbens v. Clayton, supra, it is said:

"An oil and gas lease for a term of years involves the use of the property for a specific purpose during such period as distinguished from the acquirement of title of the property, which is by means of a sale. A lease, in order to be brought within the requirements of the specific procedure that a petition is first to be filed and authorization and direction and notice made, must contemplate a conveyance of the title of property by a sale under the prescribed procedure under Comp. Laws 1909."

In the case of State v. Evans (Minn.) 108 N. W. 958, the court said:

"The propriety of a lease for the purpose of developing and working mines is recognized by all of the cases, and the rule established by the great weight of authority that such leases do not constitute a sale of any part of the land, and further, that iron or other minerals derived from the usual operation of open mines or quarries constitute the rents and profits of the land, and belong to the tenant for life or years, and to the mortgagor after sale on foreclosure and before the expiration of the time for redemption."

This court also recognized the fact that the execution of an oil and gas lease was not a sale of either real estate or personal property when it promulgated rule 9, because if the statutes prescribing the procedure for the sale of either real estate or personal property applied, rule 9 would be invalid, and this court has upheld the validity of rule 9 in Winona Oil & Gas Co. v. Barnes, supra; Carlile v. National Oil & Development Co., 83 Okla. 217, 201 Pac. 377. We conclude that the execution of an oil and gas lease is not a sale of either real estate or personal property, and that prior to the adoption of rule 9 an oil and gas lease executed by a guardian, in which no element of fraud entered and which was submitted to and approved by the county court, was valid although it was executed without notice and without competitive bidding.

The plaintiffs contend that even though the execution of an oil and gas lease on undeveloped property may not be a sale of property, yet the agreement in the instant case extending the lease on producing property necessarily sells that portion of the production to which the lessor would be entitled upon the termination of the existing lease. In Cabin Valley Mining Co. v. Hall, 53 Okla. 760, 155 Pac. 570, an extension lease was involved on developed property, and no distinction was there made between the right conveyed by the oil lease and the extension lease. In Winona Oil & Gas Co. v. Barnes and Carlile v. National Oil & Development Co., supra, extension leases on developed lands were involved, and this court held that rule 9 of this court was applicable, whereas if the same had been sales of either real estate or personal property, the statutes prescribing the procedure therefor would have been applied and rule 9 would not have been applicable. In F. C. Carter, State Auditor, v. Rector, decided November 28, 1922, 88 Okla. 12, 210 Pac. 1035, this court said:

"The only question presented by the assignments of error may be stated as follows: 'Does a consideration paid for a lease on already producing oil property constitute income to the owner of the land, or is said amount a conversion of capital?'"

In answering that question, the court said:

"It seems clear to us that nothing short of an unconditional sale of the land would

permit the interpretation sought to be placed upon the transaction by defendant in error; that is, to invoke the theory of 'converted capital' by outright sale of the mineral, which can only be accomplished, when in place, by the sale of the land containing it."

Further in the opinion the court said:

"What right did the grantee acquire under the lease? Merely the right to use and occupy so much of the surface of the lands as was necessary to explore the premises for oil and gas, and to take therefrom these products as long as the same were found in paying quantities; not the right to exclusive possession of the premises or to maintain an action therefor. A failure to find either oil or gas did not give the grantee the right to rescind the contract or recover damages."

In Garfield Oil Co. v. Champlin, 78 Okla. 91, 189 Pac. 814, fifth paragraph of the syllabus reads as follows:

"Under the decisions of this state, oil and gas, while in the earth, unlike solid minerals, are not subject to ownership distinct from the soil, and the grant of the oil, therefore, is a grant, not of the oil that is in the ground, but of such a part as the grantee may find."

In Kolachny v. Galbreath, 26 Okla. 772, 110 Pac. 902, the court said:

"The release relied upon by the plaintiff does not vest in him the title to the oil and gas in said land, and is not a grant of any estate therein, but is simply a grant of a right to prospect for oil and gas, no title vesting until such substances are reduced to possession by extracting same from the earth—an incorporeal hereditament."

The doctrine announced in these cases is supported by the cases of United States v. Biwabik Mining Company, 247 U. S. 116, and Baumbach v. Sargent Land Co., 242 U. S. 503.

We are of the opinion that a lease on developed property conveys nothing different from a lease on undeveloped property. In either instance, he acquired the right to enter upon and develop the property and to reduce to possession such oil as he was able to find and remove from the premises.

It is next insisted that the extension agreements have become forfeited because the lessee failed to drill the additional well on each allotment as provided in the extension agreement. The agreement provided that lessee would drill an additional well on the leased premises through the sand in which oil was found in the other wells, within six months from the 30th day of January, 1913, and the failure to drill such

wells in accordance with the agreement would render the extension lease null and void. The trial court found that at the time the leases were ordered by the county court there were then upon the leases wells producing from what is commonly called the Glenn sand, and the court further found:

"That no well for exploration was drilled on any of said leased premises below the 'Glenn' sand prior to January 30, 1922."

The uncontradicted testimony shows that the wells were drilled through the Glenn sand, but the trial court seemed to be of the opinion that it was necessary to drill below the Glenn sand, exploring for a deeper sand, in order to comply with the provisions of the contract. We cannot see how the language of the lease can be interpreted to require the lessee to do more than drill through the Glenn sand. Such is the plain wording of the agreement, and, having been complied with, there was no ground for cancellation for that reason.

It is next contended that the extension agreement did not become effective until the minors reached their majority, that at the time the extension agreements were executed the lands of the minors were incumbered by valid leases which did not expire until the wards reached their majority, and that the county court had no jurisdiction to order the execution of leases which were not to commence until the date the wards became of age. It is not necessary to enter into a discussion of the question as to whether the agreements would be valid if they were to commence when the minors reached their majority, because our view of the case is that the extension agreements had the same effect as a new lease carrying forward the old lease so modified by the extension agreement and with immediate possession. Such is the holding in the case of Tibbens v. Clayton, supra, and this holding is supported by Tiffany on Real Property (2nd Ed.) page 1582, and Underhill on Landlord and Tenant, vol. 2, page 1194, and 24 Cyc. 1369.

It is next contended that the lease conveyances were void because they were fraudulently procured, and reference is made to the finding of the trial court, as follows:

"The Ventura Oil & Gas Company paid, and caused to be paid to the said guardian, for his personal use, the sum of $100, for which he made no accounting as guardian."

Plaintiffs insist that this action constituted fraud and entitled the plaintiffs to cancellation of, the leases. Without entering into a discussion of the facts shown by the record in regard to this transaction, and even though such action amounted to fraud, the plaintiffs cannot take advantage thereof. The Papoose Oil Company is an innocent purchaser of this property. While it is true the trial court found that on December 21, 1917, the date the Ventura Oil & Gas Company assigned the leases to the Papoose Oil Company:

"The defendant had knowdedge that no well for exploration had been drilled on said leased premises below the 'Glenn' sand, and had knowledge that said oil and gas leases so assigned to it had been executed by James Osborn as guardian of Clara ? Osborn and Irene Osborn, minors, for the consideration above set forth, and none other, and that no notice of the sale thereof was required by the county court of Atoka county, or given by the guardian of said minors, and that no competitive bidding for the purchase thereof, was had or permitted, and that same was not sold to the highest bidder therefor"

—yet no finding was made and there is no evidence in the record to show that the Papoose Oil Company had, knowledge of the payment of the $100 to the guardian, or knowledge of any facts and circumstances which by the exercise of reasonable prudence and diligence would have caused him to ascertain the existence of a fraud. The plaintiffs insist that they had no knowledge of this fraud until shortly before the bringing of the suit, and it certainly cannot be contended that the defendant was in any better position to ascertain from the records the existence of this fraud than the plaintiffs.

It is next insisted that the extension leases were void because there was no consideration for their execution. The leases which were in existence at the time the extensions were made provided for a royalty of 10 per cent. of the oil produced, whereas under the new agreements the royalty of 12½ per cent. was paid. Although the 12½ per cent. had been paid practically during the entire time the lease had been operated by reason of the ruling made by the Secretary of the Interior, yet the plaintiffs cannot be permitted to say that the ruling by the Secretary of the Interior would require the payment of the additional royalty and yet fail to extend the terms of the lease. If that part of the ruling failed, the entire rule failed and, therefore, the plaintiff was only entitled to receive 10 per cent. of the oil as royalty, but by the new agreement 12½ per cent., which was a sufficient consideration to sustain the contract.

We are of the opinion that the judgment of the trial court should be reversed and cause remanded, with directions to enter judgment for the defendant and it is so ordered.

JOHNSON, C. J., and KANE, KENNAMER, and NICHOLSON, JJ., concur.