## DALE v. WINTERS OIL CO.

No. 13816—Opinion Filed Dec. 16, 1924.

Rehearing Denied Feb. 2, 1926.

1. **Indians—Oil and Gas Leases on Restricted Land — Extensions — Departmental Regulations.**

The Secretary of the Interior had authority under the statutes of the United States to adopt or promulgate regulations governing leases of Cherokee Indian allottees whose lands were restricted under the laws of the United States. The regulations of April 20, 1908, providing for an increase in the royalty as to prior leases from one-tenth of the gross oil to one-eighth thereof for the benefit of the Indian lessor, and the extension of the term of the lease from the period of 15 years from date to a term for as long as oil or gas is found in paying quantities, have been examined and found to be consistent with the authority granted the Secretary by statute, appropriate to the execution of his powers, and not unreasonable. A compliance therewith by a lessee or assignee, and the acceptance of the benefits thereof by the Indian lessor, operates to increase the royalty and to extend the term of the lease.

2. **Same—Validity of Extension—Estoppel of Lessor—Rights of Assignee.**

Where the assignee of the lessee in a departmental lease subject to the jurisdiction of the Secretary of the Interior, complied with the regulations of the Secretary of the Interior of April 20, 1908, and the lessor therein for the period of approximately 11 years accepts the benefits of the increase in royalty and permits the assignee to conduct development on the premises with full knowledge and record notice of the fact that the assignee relied on a valid title to a leasehold estate for as long as oil or gas is found in paying quantities, such lessor is barred by estoppel, adoption, or ratification or by the equitable doctrine of laches from asserting that said lease expired by limitation 15 years from its date.

3. **Same—Validity of Lease Assignment—Approval by Secretary of the Interior.**

Where the assignment of an oil and gas mining lease was executed and delivered to the Secretary prior to the removal of re-

strictions on the land, the Secretary had full power to approve the same, and his act of approval relates to the date of the execution of said assignment.

(Syllabus by Lyons, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Nowata County; C. W. Mason, Judge.

Action by Willella Myers Dale against Winters Oil Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Rainey & Flynn, A. B. Campbell, W. A. Chase, and Calvin Jones, for plaintiff in error.

Humphrey & Campbell and Stanford, Seacat & Seacat, for defendant in error.

Opinion by LYONS, C. The parties occupy the same position in this court that they occupied in the court below, and will be referred to as plaintiff and defendant.

The plaintiff sued the defendant in ejectment for the recovery of certain premises upon which the defendant claimed to be the holder of a valid and subsisting oil and gas mining lease. The issue in the case was the validity of defendant's lease; the plaintiff contending that said lease expired 15 years after the date of execution thereof, and the defendant contending that said lease was in force and effect for a term of 15 years, and as long thereafter as oil or gas was produced in paying quantities. The cause was tried to a jury, a verdict was rendered in favor of defendant, and from a judgment thereon the plaintiff appeals.

The plaintiff is the owner of the premises in dispute as an allottee of the Cherokee Nation. The defendant holds, by assignment, an oil and gas mining lease on departmental form. The original lease was executed by the plaintiff as lessor to the Oriental Oil & Gas Company, as lessee; was duly approved by the Secretary of the Interior; was thereafter duly assigned by assignment on departmental form duly approved by the Secretary of the Interior. Said lease was executed on December 20, 1904, for a term of 15 years on its face, and it is the contention of the plaintiff that the lease expired by limitation on December 20, 1919.

It was the theory of the defendant that under the terms of the lease, the rules and regulations of the Secretary of the Interior, the terms of the assignment of said lease, the provisions of the approval thereof. and under the acts and conduct of the parties that the said lease became at the time of its acquisition by the defendant a lease for a term of 15 years, and as long thereafter as oil or gas is found in paying quantities.

It appears that when the assignment of said lease was made that the same was approved by the Secretary of the Interior under a form of approval which required an increase in royalty from ten per cent. to twelve and one-half per cent. and a valid obligation on the part of the lessee to pay the same; and it further appears under said form of approval by the Secretary that the consideration for the said increase in royalty was the extension of the term of the lease for a term of 15 years, and as long thereafter as oil or gas was found in paying quantities.

It is claimed that under the rules and regulations of the Secretary under which the original lease was made, under the provisions of the original lease, and under the rules and regulations promulgated after the execution of the original lease, all of which were relied on to change the terms of said lease, that this order of approval was valid, was accepted by both lessor and lessee, and that in view of said acts and conduct of the parties and the actual payment of the increased royalty over a long term of years, that the new contract for the increased term of the lease must be deemed to have been agreed upon by the parties.

It is said that the plaintiff is bound by the terms of such new contract, either by an adoption, a ratification, or an estoppel. This was the theory under which the trial court submitted the cause to the jury, and the principal contention here and the only one which requires discussion is that this theory is wholly erroneous as a matter of law, and that the trial court should have held, as a matter of law, that the lease terminated 15 years from the date of its execution, and that the retention of the premises after said date by the oil and gas lessee was illegal and unjustifiable, and that a verdict should have been rendered for the plaintiff.

It is necessary in order to determine this controversy to examine as briefly as possible the history of the leasing of lands of Indian citizens under the sanction and guardianship of the government of the United States exercised through its Executive Department and committed to the Secretary of the Interior.

In the case of Cherokee Nation v. Hitchcock, 187 U. S. 295, 47 L. Ed. 183, the Supreme Court of the United States, in construing the Act of June 28, 1898 (30 Stat. at L. 495, chap. 517), held as follows:

"3. The action taken by the Secretary of the Interior upon applications for leases for mining purposes of tribal lands in the Indian Territory under the Act of June 28, 1898 (30 Stat. at L. 495, chap. 517), authorizing him to execute such leases, is a matter of administration, cognizable solely by the executive department.

"4. The Cherokee Nation was not so vested by the Treaty of 1835 (7 Stat. at L. 478), and the patent based thereon, with the sole control over the lands thus ceded to it as to preclude Congress, under its plenary power of control over the Indian tribes in the Indian Territory, from enacting those provisions of the Act of June 28, 1898, 30 Stat. at L. 495, chap. 517), which authorize the Secretary of the Interior to prescribe regulations for the leasing of minerals in its tribal lands for the purpose of making them productive and of securing therefrom an income for the benefit of the tribe."

It will be observed that under the foregoing decision the power of the Secretary, when duly authorized thereto by the act of Congress, was so broadened that he was permitted to make leases direct and initiate the contract himself. Thereafter, under the provisions of the Act of July 1, 1902 (32 Stat. 716-726), being the Cherokee Allotment Agreement, Cherokee citizens were authorized to rent their allotments for mineral purposes, with the approval of the Secretary of the Interior, and not otherwise.

The lease in controversy was made under the authority of that act and was duly approved by the Secretary of the Interior. The lease contains the following material provision:

"And the party of the second part agrees that this indenture or lease shall in all respects be subject to the rules and regulations heretofore or that may be hereafter lawfully prescribed by the Secretary of the Interior relative to oil and gas leases in the Cherokee Nation."

It should also be kept in mind that this lease provides for a term of 15 years from date of execution thereof, and provides for a royalty of ten per cent. or one-tenth of the gross oil.

The assignment under which the defendant in this case holds and the order of approval thereof by the Secretary of the Interior are as follows (omitting acknowledgment of corporation):

"Assignment of Oil and Gas Lease.

"Whereas, the Secretary of the Interior has heretofore approved an oil and gas mining lease dated December 20th, 1904, entered into by and between Oriental Oil & Gas Company of Pheonix, Arizona, and Willella Myers, of Goodys Bluff, Indian Territory, covering the following described land in the Cherokee Nation, Indian Territory: N½ of NE¼ section 12 twp. 25, N., R. 16 E., containing 80 acres.

"Now, therefore, for and in consideration of eleven thousand ($11,000.00) dollars, the receipt of which is hereby acknowledged, the said Oriental Oil & Gas Company, the lessee in the above-described lease, hereby bargains, sells, transfers, assigns, and conveys all its right, title and interest of the lessee in and to said lease, subject to the approval of the Secretary of the Interior, to Winters Oil Company of Bradford, Pennsylvania.

"In Witness Whereof, the said lessee has hereunto set its corporate hand and seal this 25th day of April, 1908.

"(Signed) Oriental Oil & Gas Company.

"(Signed) By M. Winters, President."

"Acceptance by Assignee.

"The assignee in the above and foregoing assignment made subject to the approval of the Secretary of the Interior, hereby accepts such assignment and agrees to fulfill all the obligations, conditions. and stipulations in said described indenture of lease, when assigned, and the rules and regulations of the Secretary of the Interior applicable thereto, and to furnish proper bond guaranteeing a faithful compliance with said lease and this agreement.

"In Witness Whereof, the said assignee has hereunto set its corporate hand and seal this 25th day of April, 1908.

"(Seal)

"(Signed) Winters Oil Company,

"By M. Winters, President.

"Attest: F. F. Connelly. Secretary.

"Department of the Interior:

"Washington, D. C. Oct. 2, 1908.

"Approved:

"Frank Pierce, Acting Secretary.

Endorsed:

"State of Oklahoma,

"Nowata County, SS.

"I hereby certify that this instrument was filed for record in the office of the register of deeds on Oct. 19, 1908, at 10 o'clock a. m. and duly recorded in Record 11. page 270.

"Alice Wemer, Deputy Register of "Deeds of Nowata County."

The order of approval of the Secretary of the Interior is as follows:

"Department of the Interior,
"Washington, D. C.

"October 2, 1908,

"The assignment of this lease to the Winters Oil Co., is approved. Subject to the regulations of April 20, 1908. The rate of royalty on oil to be 12½%.

"Frank Pierce, Acting Secretary."

"Stipulation Increasing Oil Royalty and Extending Term of Lease To be Executed in Quadruplicate.

"Whereas, the Secretary of the Interior has heretofore approved an oil and gas mining lease (No.3177) dated December 20th, 1904, entered into by and between Wilella Myers, lessor, and Oriental Oil and Gas Company, lessees, and herein the oil royalty is stipulated to be ten per cent. of the gross proceeds; and

"Whereas, the undersigned, present owner—of said lease, is willing to increase the royalty on oil in said lease to twelve and one-half per cent. of the gross proceeds, on condition that the term of said lease shall be extended to as long as oil or gas is found in paying quantities, and that said lease when extended shall have all the rights, privileges, conditions and terms of the lease form approved and issued April 20, 1908, by the Secretary of the Interior, and it has been shown by the Secretary of the Interior, that the owner of said lease has notified the owner— of the land described in said lease of willingness to increase said royalty on oil on the terms and conditions hereof:

"Now, therefore, the owner of said lease, on the terms and condition herein stated, does hereby agree that from and after the date hereof, the oil royalty in said lease shall be twelve and one-half per cent. of the gross proceeds from the said real estate therein described; for and in consideration thereof, the term of said lease shall be and the same is hereby extended to as long as oil or gas is found in paying quantities and that all the rights, privileges, conditions and terms of the lease form approved and issued April 20, 1908. by the Secretary of the Interior, and of this contract, are made a part of said lease first above described, the same as if written therein at length, and all terms and conditions of said lease originally executed in conflict with the terms and conditions hereof and of said lease form approved April, 20 1908, are rescinded and canceled.

"In Witness Whereof, the undersigned has hereto set its hand and seal this 21st day of August, 1908.

"Winters Oil Company.
"By M. Winters, President."
"(Seal)

(Corporate acknowledgment omitted)

"Approved Oct. 2, 1908, and made a part of lease dated December 20, 1904, as above described.

"(Signed) Frank Pierce,
"Acting Secretary of the Interior."

There appears also a division order to the Prairie Oil & Gas Company executed by the plaintiff and defendant in this action, which is as follows:

"December 16, 1912.
"To the Prairie Oil & Gas Company:

"The undersigned certify and guarantee that they are the legal owners of Winters Oil Company Wells Nos. 1 and up on the Willella Dale nee Meyers farm, located in N½ of the NE¼ of sec. 12, twp. 25 N. R. 16 E. Cherokee Nation, Nowata County, Oklahoma, including the royalty interest and until further notice you will give credit for all oil received from said wells as per directions below:

| Credit to | Division of Interest | Post Office Address |
|---|---|---|
| Willella Dale nee Meyers | ⅛ of all Royalty | Nowata, Okla., Box 311. |
| Winters Oil Company | ⅞ or all working int. | Bradford, Pa. |

Tank Nos._____

"The Prairie Oil & Gas Company is hereby authorized, until further notice to receive oil from said well interests for purchase from said parties severally in the proportions named, subject to the following conditions:

"First—the oil run in pursuance of this order shall become the property of the Prairie Oil & Gas Company as soon as the same is received into its custody.

"Second—The oil received from the above well interests shall be paid for to the well owners or their assigns in proportion to their respective interests shown above, at the market price paid by the Prairie Oil & Gas Company for the same kind and quality of oil on such day, within two months after said oil is run, on which day the owner shall notify the Prairie Oil & Gas Company of his election to take said price for the same, or in case the owner shall make no election within two months after the oil is run, then at the market price as aforesaid at the opening on the first business day after the expiration of said two months.

"Third—The Prairie Oil & Gas Company shall deduct three per cent. from all oil received from said well interests into its custody, on account of dirt and sediment, and in addition, shall deduct one-twentieth of one per cent. for each degree of artificial heat above normal temperature to which said oil shall have been subjected, and oil shall be steamed when necessary to render it merchantable.

"Fourth—The undersigned agree, in case of any adverse claim of title to furnish the

Prairie Oil & Gas Company satisfactory evidence of title, or in case of failure to do so, to furnish satisfactory indemnity, upon reasonable demand, against such adverse claim or claims, and that the said the Prairie Oil & Gas Company may retain the purchase price of the oil until we do so, or until the dispute as to ownership is settled.

"Witness

"M. Winters

"C. L. Faust, Jr."

"Willella Dale nee Myers,

"Winters Oil Company,

"By T. F. Connelly, Treasurer."

It will be seen from the foregoing that both plaintiff and defendant recognized that the defendant had agreed to the rules and regulations of the Secretary of the Interior and had agreed to an increase in the royalty from 10% to 12½%, or from one-tenth to one-eighth. It will be noted also that the assignment was executed on the 25th day of April, 1908, and was approved by the Secretary of the Interior on October 2, 1908. On April 20, 1908, the Secretary of the Interior had promulgated new rules and regulations providing substantially for the increase of the term of the lease for as long as oil or gas was found and for the increase of the royalty from one-tenth to one-eighth of the gross oil.

It will be observed that the Indian lessor received a substantial benefit by the increase in royalty, and that the lessee, as a consideration for its agreement to pay the increase in royalty and as a consideration for such increased burden, received an extension in the term of the lease for as long as oil or gas was found in paying quantities.

The rules and regulations of the Secretary of the Interior under which this was done are material, and are as follows:

"Royalties, 15, a. The mininum rate of royalty on oil on and after May 1, 1908, shall be 12½ per cent. of the gross proceeds of the oil produced from leased premises, and payment shall be made at the time of sale or removal of oil.

"b. Any lease approved, delivered, or assigned since October 14, 1907, wherein the royalty on oil is less than 12½ per cent. may, with the approval of the Secretary of the Interior, be subject to all rights, privileges, conditions, and terms of the lease form approved and issued by the Secretary of the Interior April 20, 1908, the same as if written therein at length, and any of the terms and conditions in said executed lease in conflict with the terms and conditions of said lease form of April 20, 1908, will be revoked and canceled, on and in consideration that owner of said lease stipulate in writing to increase the royalty on oil therein to 12½ per cent. of the gross proceeds. (Procured 10rm of stipulation from Superintendent; Union Agency.)

"c. If the owner of any lease mentioned above in (b) shall fail to stipulate in writing for the increase of royalty to 12½ per cent. the rate of royalty for said lease shall, on and after May 1, 1908, be 12½ per cent. and said lease shall be free from any further increase in the rate of royalty on oil, but shall not have the rights, privileges, conditions, and terms of the lease form approved and issued by the Secretary of the Interior April 20, 1908, until said stipulation is filed.

"d. If the owner of a lease delivered prior to October 14, 1907, wherein the royalty on oil is less than 12½ per cent., stipulates in writing within eight years from the date of said lease to increase the royalty on oil for said lease to 12½ per cent. and shall show that he has notified the lessor in writing, said lease shall thereafter have all the rights, privileges, conditions and terms of the lease form approved and issued April 20, 1908, the same as if written therein at length, and any of the terms, and conditions of said lease as originally executed in conflict with the terms and conditions of said lease form of April 20, 1908, will thereby be revoked and canceled.

"e. In all cases notice in writing must be given by owner of lease to owner of leased land of intention to increase royalty on oil and, in consideration thereof, obtain the benefits of the lease form approved by the Secretary of the Interior April 20, 1908, and stipulation of owner of lease agreeing to increase of royalty on oil must be filed with the Secretary of the Interior on or before eight years from date of execution of lease.

"f. Any lease heretofore approved, wherein the royalty on oil is 12½ per cent. or more, may, on terms and conditions to be approved by the Secretary of the Interior, at any time within eight years from date of the lease, and before removal of restrictions, be made subject to the terms, conditions, rights, and privileges of the lease form approved by the Secretary of the Interior April 20, 1908, as though the terms of said lease form were written in and made a part of such lease."

We think that under the situation presented by the acts of the parties and the rules and regulations of the Secretary of the Interior the rule announced by this court in the case of Scott v. Signal Oil Co., 35 Okla. 172, 128 Pac. 694, is squarely applicable. We quote from the opinion in that case:

"Upon the issue of estoppel the evidence was conflicting, but there was evidence reasonably tending to support all the allegations contained in the part of plaintiff's re-

ply above set out. The court, after a full consideration of the evidence, found the issues in favor of the plaintiff. If, therefore, the facts alleged are sufficient to constitute an estoppel, the judgment of the court below must be affirmed, for there is no principle of law more firmly settled in this jurisdiction than that this court will not set aside the findings of the court below on a question of fact, where the evidence reasonably tends to support it. The evidence reasonably tends to show: That the lease was assigned on the 3rd day of May, 1907, and that the assignment was approved by the Secretary of the Interior on the 6th day of September, of the same year. That on the 17th day of February, 1908, D. H. Kelsey, the Indian Agent, notified the lessor of said assignment through the United States mail by inclosing to her a triplicate copy of the approved assignment to the Signal Oil Company of the lease executed by her in favor of Charles B. Shaffer. That thereafter the lessor accepted rentals and royalties from the assignee in accordance with the terms of the lease, as follows: March 14, 1908, $12; June 10, 1908, rental, $40; January 13, 1909, royalties, $26; September 9, 1909, royalties, $50; November 16, 1911, royalties, $105.55. It also appears that the assignee, on the faith of the approval of its assignment, in addition to the payment of rentals and royalties above set out, drilled a gas well on the land in question, out of which the royalties accrued.

"It seems to us that the conduct of the lessor was so inconsistent with a purpose to stand upon her rights under the assignment clause of the lease that there is no room for a reasonable inference to the contrary. The more usual manner of waiving a right is by conduct or acts which indicate an intention to relinquish the right, or by such failure to insist upon it that the party is estopped to afterward set it up against his adversary.' 40 Cyc. 265, and cases cited. This is a clear case for the application of the doctrine of waiver by acts or conduct, and the court below very properly gave the plaintiff the benefit of the rule."

In a very recent decision from this court, the case of Papoose Oil Co. v. Swindler et al., 95 Okla. 264, 221 Pac. 506, the court lays down the rule—

"Where the oil and gas lease provided for 10 per cent. of the oil produced as royalty and the extension lease provided for 12½ per cent., there was sufficient consideration to support the extension agreement."

We have considered the contention made by the plaintiff in error that under the case of Turner v. Seep, 167 Fed. 646, and one or two similar decisions the Secretary had merely the veto power, and that his act of approval or disapproval of the lease ex-

hausted his authority. Whilst we have no objection to the rule announced based on the facts of those cases, we would, if it were necessary, squarely decline to follow it under the authority of Scott v. Signal Oil Co. and Papoose Oil Co. v. Swindler, supra.

From a practical standpoint, under the terms of the lease and under the rules and regulations of the Secretary of the Interior, much wider and more varied powers were exercised by the Secretary of the Interior than the mere power of veto. We think that the exercise of authority by the Secretary in such wider and more varied ways for the protection of the Indian was proper, and that under the decision of the Supreme Court of the United States in the case of Parker v. Richard et al., 250 U. S. 235, 63 L. Ed. 954, a wider authority than the mere power of veto in the Secretary of the Interior has been upheld. In fact, it is a fair inference from the federal decisions that it must clearly appear that the Secretary acted in excess of his authority and that his rules and regulations are contrary to the wide authority vested in him for the protection of Indians before the same can be disturbed. La Motte v. United States, 254 U. S. 570, 65 L. Ed. 410.

It is known that the rules and regulations in question providing for the increase in royalty were of general benefit to the Indian lessors, promoted development, gave them an increased sum of money and were for their best interest. No authority has been cited which tends in any way to hold that these rules and regulations are illegal or in excess of the powers of the Secretary of the Interior, and inasmuch as such rules and regulations have been acquiesced in generally throughout the domain which was formerly the Indian Territory of the state of Oklahoma, occupied by the Five Civilized Tribes, this court would not lightly disturb the property rights which have vested by reason of such rules and regulations of the Secretary. Indeed, it might well be said that the effect of such rules and regulations at this time constitutes a rule of property. See McDougal v. McKay, 237 U. S. 372, 59 L. Ed. 1001. Such rules and regulations have all the force of statutes. Caha v. U. S., 38 L. Ed. 415. Since this court cannot, as a practical matter, shut its eyes to the fact that these important rules and regulations providing for an increase in royalty and an extension of the term have been generally acquiesced in for a period of more than 15 years in matters involving millions of dollars in property rights, we

shall not at this time declare such rules and regulations void.

Further, in this case, by the plain act of the parties, the benefits of the rules and regulations and of the change in the situation were fully adopted and accepted by the lessor. It is said, however, that the lands in controversy became unrestricted under the terms of the act of Congress of May 27, 1908, and were unrestricted when the assignment was approved by the Secretary on October 2, 1908. It is claimed that this situation in some way nullifies the result of the rules and regulations and action of the Secretary; however, this contention has been foreclosed by the decision of the Supreme Court of the United States in the case of Anchor Oil Company v. Gray, 65 L. Ed. 1070, and by the decision of this court in Scioto Oil Co. v. O'Hern, 67 Okla. 106, 169 Pac. 483, where it is held that the action of the Secretary of the Interior relates back to the date of the lease.

In this case it will be noted that the date of the assignment was prior to the removal of the restriction by the Act of May 27, 1908. Further, the parties, by agreement and by their acts and conduct in this case, as well as by express stipulation, recognized the power of the Secretary to act and in law conferred upon him the right to act. The plaintiff's contention, therefore, cannot be maintained. On this point, see Wellsville Oil Co. v. Miller, 243 U. S. 6, 61 L. Ed. 559.

It appears, further, in this case that the plaintiff for a full term of eleven years, from October, 1908, to December, 1919, sat by and made no claim, whilst fully aware that the lessee was developing the premises under a belief that it held a lease for a term of 15 years from date and as long as oil or gas was found in paying quantities. The claim, therefore, of the plaintiff comes too late. The rule announced by the Supreme Court of the United States is as follows:

"The fluctuating character and value of this class of property is remarkably illustrated in the history of the production of mineral oil from wells. Property worth thousands today is worth nothing tomorrow; and that which would today sell for $1,000 as its fair value, may, by the natural changes of a week or the energy and courage of desperate enterprise, in the same time be made to yield that much every day. The injustice, therefore, is obvious of permitting one holding the right to assert an ownership in such property to voluntarily await the event, and then decide, when the danger which is over has been at the risk of another, to come in and share the profit. While a much longer time might be allowed to assert this right in regard to real estate whose value is fixed, on which no outlay is made for improvement, and but little change in value, the class of property here considered, subject to the most rapid, frequent, and violent fluctuations in value of anything known as property, requires prompt action in all who hold an option whether they will share its risks or stand clear of them." Twin-Lick Oil Co. v. Marbury, 23 L. Ed. 328.

The delay in the foregoing cause was not quite four years.

"We think, both on authority and principle,—a principle necessary to protect those who invest their capital and their labor in enterprise useful but hazardous—that we should hold that plaintiff has delayed too long." Twinlick Oil Co. v. Marbury, supra.

"The mere institution of a suit does not of itself relieve a person from the charge of laches, and if he fail in the diligent prosecution of the suit, the consequences are the same as though no action had been begun. Where the question of laches is in issue, the plaintiff is chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry. Where mining property has been developed by the courage and energy and at the expense of defendants until it has become of enormous value, courts will look with disfavor upon the claims of plaintiff thereto who has lain idle while awaiting the results of this development, and will require not only clear proof of fraud, but prompt assertion of plaintiff's rights." Johnston v. Standard Mining Co. (U. S.) 37 L. Ed. 480.

See, also, Pierce Oil Corporation v. Schacht, 75 Okla. 101, 181 Pac. 731.

It is plain, therefore, that the plaintiff has been guilty of such laches as would bar recovery.

We have examined the pleadings, the lease, the assignment and stipulation, the division orders, the rules and regulations of the Secretary of the Interior, and the proceedings had before him. It is clear to us that under the undisputed testimony the verdict is right and that the judgment of the lower court in favor of the lessee is the only result which could properly have been reached in this cause.

We have further examined the instructions of the court, upon which error is predicated, which are instructions No. 4, No. 6, No. 7, and No. 8. These instructions are as follows:

"Instruction No. 4. You are further instructed that under the evidence in this cause you must find for the plaintiff, unless you find that the plaintiff ratified and adopted the acts of the Secretary of the Interior in the execution of the stipulation extending said lease as the acts of the plaintiff under the terms of other instructions given you herein, or unless you find from the evidence herein that acts and conduct of the plaintiff were such as to indicate an intention to relinquish the right to claim that the lease expired on December 19, 1919, or unless you find that there was such a failure on the part of the plaintiff to claim her rights thereunder after the knowledge of the execution of the stipulation extending the lease and its approval by the Secretary of the Interior, as would amount to an estoppel or waiver of said rights under other instructions herein given you."

"Instruction No. 6. You are further instructed that if you find from the evidence in this case that the plaintiff was enrolled as a Cherokee Indian of less than half Indian blood, then you are instructed that at the time the Secretary of the Interior approved the stipulation extending the term of the lease, he had no authority so to do, and his act in so doing was the act of an unauthorized third person. But if you further find that said Secretary was so acting in behalf and for the benefit of the plaintiff, then such act may be confirmed, ratified, and adopted and become binding upon the plaintiff with the same force and effect as though the act had been performed under an original and sufficient grant of authority so to do."

"Instruction No. 7. You are further instructed, that the question in this case of whether the plaintiff did or did not ratify the act of the Secretary of Interior in approving the stipulation increasing the royalty and extending the term of the lease, is a question of fact for you gentlemen of the jury to determine, and if you find from the evidence herein that the plaintiff deliberately performed any act with a knowledge of the existence of this stipulation and its terms which was consistent with an intention to ratify it, or was inconsistent with a contrary intention, then you should find that the plaintiff did in fact ratify this act and your verdict should be for the defendant."

"Instruction No. 8. You are further instructed that under the terms of section 920 of the Revised Laws of Oklahoma, which was in force and effect during all the time covered by this section, it is provided that a voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known or ought to be known to the person accepting. In this connection you are instructed that if you find from the evidence in this case that the defendant company entered into a so-called stipulation increasing the oil royalty and extending the term of the lease, wherein and whereby the defendant company agreed that from and after the date of such stipulation the oil royalty under the lease which the plaintiff in this case alleges expired on the 20th day of December, 1919, should be increased from ten to 12½ per cent. of the gross proceeds of the oil from said real estate therein described, and for and in consideration whereof the terms of said lease should be and the same was thereby extended to as long as oil or gas were found in paying quantities, and if you further find that such stipulation was approved by the acting Secretary of the Interior and by his order made or attempted to be made a part of the lease dated December 20, 1904, and if you further find that thereafter the plaintiff herein was informed of this transaction and knew the facts relating thereto, in relation to the increased royalty to the plaintiff and in relation to the extension of said lease for a period of time as long as oil or gas were found in paying quantities, and if you further find from the evidence that the plaintiff in this case thereafter voluntarily accepted any benefit from said transaction, then such voluntary acceptance is equivalent to a consent to the obligations of the transaction, and in that event the defendant, Winters Oil Company, would be entitled to hold and occupy said lease so long as oil or gas were found in paying quantities, and your verdict should be for the defendant."

It must be said that the instructions stated the law at least as favorably as the plaintiff was entitled to have it stated, and that there is no error in the same of which the plaintiff is entitled to complain.

There is no error in the record. The judgment of the trial court is accordingly affirmed.

By the Court: It is so ordered.

Note.—See 31 C. J. § 48.