June H. COLLINS, Plaintiff in Error,

v.

Glenn H. CHAPPELL, Defendant in Error.

No. 38055.

Supreme Court of Oklahoma.

Dec. 23, 1958.

Steele, Daugherty & Downey, Tulsa, for plaintiff in error.

W. E. Maddux, Nowata, for defendant in error.

BLACKBIRD, Justice.

This appeal involves the right of defendant in error, Chappell, the admitted owner of the surface and reversionary mineral rights in and under a 40-acre tract of land, to recover certain impounded proceeds from the sale of oil from producing wells thereon, and to have his title to the entire fee simple estate in said land quieted against plaintiff in error. For an understanding of the situation out of which the controversy arose, certain historical facts concerning it should be related.

In March of 1908, one Harry Wright, as trustee for certain other parties, executed and delivered an oil and gas lease on this tract (and another 40 acres) to Cabin Valley Mining Company, hereinafter referred to merely as "Cabin Valley." Said lease was for a term of 15 years, and as long thereafter "as oil and gas can be produced in paying quantities * * *"; and provided for royalty payments, from the lessee to the lessor, of 23% "of the gross run of oil or gas produced thereon." Production was obtained under said lease and has been continuous to and during the trial of this cause.

In November, 1908, the aforementioned title holder and lessor, Wright, executed and delivered a warranty deed conveying the tract to one Hall, subject to the above described lease and reserving all of said

grantor's "right, title and interest" therein. A little more than a month later, Wright transferred his royalty under the lease to Cabin Valley, the lessee.

Thereafter, Hall deeded his interest in the land to one Moore, who mortgaged it. When said mortgage was foreclosed several years later, one Bassman bought it in at foreclosure sale and received a sheriff's deed, dated June 8, 1926, to the property that had been covered by the mortgage.

Thereafter, on the 26th day of the same month, Cabin Valley assigned its lease, together with its "leasehold estate", to A. E., and Inez Paulger and G. A. Tibbs. By mesne assignments, thereafter executed and delivered, the last of which was dated June 30, 1926, Carter Oil Company became the owner of the working interest in the aforesaid oil and gas lease originally owned by Cabin Valley. On the day before, or June 29, 1926, Chestnut & Smith and others, who were then the owners, by mesne conveyances through the Paulgers and Tibbs, of the royalty under said lease, executed and delivered to the same oil company, hereinafter referred to merely as "Carter", an instrument entitled "Oil and Gas Lease", purporting to cover the same land. Thereafter, in 1931, plaintiff in error's later deceased husband, Ray M. Collins, purchased the lessor's one-eighth royalty in the leased premises. In 1936, Carter Oil Company assigned its working interest to Whitehill Oil Corporation; Whitehill, in 1946, assigned an undivided one-fourth of its interest to one Warwick; and Collins continued to receive his royalty payments until after the defendant in error obtained from Bassman (the hereinbefore mentioned foreclosure sale purchaser), and his wife, a warranty deed, dated January 8, 1937, describing the land. Said deed's habendum clause recited that the grantee was to have and to hold the "described premises" free and clear of "all former grants * * * except oil and gas lease thereon of record and rights reserved therein * * *".

A month later, defendant in error addressed a letter to Stanolind Crude Oil Purchasing Company, hereinafter referred to merely as "Stanolind", which said company was purchasing all of the oil produced by the wells on the leased premises. In said letter, defendant in error asserted that Carter was producing the oil under a lease obtained from parties who had no right to give it, and requested that Stanolind withhold and impound the proceeds from "both the working interest and the royalty interest" until he could submit to it an abstract showing the proper disposition to be made of said funds. Thereafter, Stanolind complied with said request; but, after Whitehill Oil Corporation and Warwick, for a consideration of $500.00, obtained an oil and gas lease executed and delivered to them by defendant in error on September 1, 1950, the latter gave his assent to Stanolind's paying out and ceasing to impound, the lessee's, or working interest owner's, share of the lease's oil run proceeds. On September 5, 1950, Whitehill Oil Corporation and Warwick assigned to one Thos. A. Jarick the lessee's interest under both the Cabin Valley lease and the instrument termed a lease that Carter had obtained on June 29, 1926, as aforesaid.

Thereafter, in January, 1952, defendant in error commenced this action as plaintiff against the defendants Stanolind and June H. Collins, who, upon Ray M. Collins' death in 1940, succeeded to his royalty interest, if any. Stanolind filed an answer in the nature of interpleader, admitting it held impounded funds for whoever the court determined was the rightful owner of the "one-eighth royalty oil." At the trial, it was announced that Indiana Oil Purchasing Company had become Stanolind's successor corporation. Defendant in error and plaintiff in error, June H. Collins, will hereinafter be designated "plaintiff" and "defendant", as they appeared in the trial court.

The obvious purpose of the action, as the issues were joined by pleadings and stipulations of fact, was to determine who, as between plaintiff and defendant, was the owner of the royalty in and from the leased premises, and, who, as such, was entitled

to said owner's share of the impounded oil run proceeds.

At the close of the trial before the court, judgment was entered for plaintiff, decreeing him to be the owner of the entire fee in the 40 acres, and of the sum of $7570.60 then held by Indiana Purchasing Company as accrued proceeds from the sale of one-eighth of the oil produced from said land since the impounding of such funds commenced. After the overruling of her motion for new trial, defendant perfected the present appeal, thus activating the judgment's direction that Indiana Oil Purchasing Company continue to hold the impounded funds pending any appeal from said judgment.

The argument, defendant relies upon for reversal, is to the general effect that the trial court erred both in his view of the evidence and of the law applicable thereto. Both parties agree, in substance, that the right to receive the rents and royalties under the early-day Cabin Valley lease, which we will refer to as the "royalty interest", was, in the beginning effectively severed, as a distinct estate, separate from the remainder of the fee of the 40 acres, when Harry Wright reserved it by the terms of his November, 1908, conveyance to Hall, and oil, in paying quantities, was produced and sold within the term of said lease. Also, they recognize, consistent with their fact stipulation at the trial, that this severance or separation of estates, or interests, under said lease continued to exist on June 29, 1926, when Robert M. Galer, Carter's assignor, owned the original Cabin Valley lease and defendant's predecessors in title, Chestnut & Smith, and others, owned the royalty interest and oil royalty accruing thereunder. However, it is plaintiff's position—as to what occurred after that—that when, on that date, said royalty owners executed and delivered the hereinbefore mentioned instrument termed "Oil and Gas Lease" to Carter, this amounted to a "surrender by operation of law" of the Cabin Valley lease, thereby effectively extinguishing the royalty interest thereunder and resulting in a merger of this interest with the reversionary mineral interest, to become one entire fee, of which plaintiff claims, and the trial court held, he is the owner. Defendant denies that the execution of the Carter "lease" had such effect, but readily agrees that Chestnut & Smith, and the other parties referred to therein as "lessor" (owning only the royalty under the Cabin Valley lease, as distinguished from a mineral fee) had no right to give a new oil and gas lease on the land and she says that said instrument, though entitled "lease" was merely a modification of the Cabin Valley lease and was entered into for the principal purpose of reducing the royalty payment of 23% originally prescribed (and, over a long period, paid) to one-eighth, or 12½%. Although, in part of plaintiff's argument, he refers to the opinion he expressed as a witness, to the effect that it would have been impossible, from an economic standpoint for Carter, or any other lessee, to have continued production under the requirement of the old Cabin Valley lease, that the royalty owners be paid, as their share of said production, 23% thereof free and clear of all expenses; and he infers that it is unfair to him as owner of the reversionary interest to uphold the lessee and the owners of the royalty interest in effectively delaying, or forestalling, reverter to him of such interest, by reducing the original royalty payment requirement, thus enabling the lessee to continue production under it and thereby keep the lease in force (a consideration which may have had substantial weight with the trial judge), plaintiff points to no legal obstacle to this being done except what has already been mentioned, i. e., that in reducing the royalty payment by the vehicle of entering into the "new lease" of 1926, said lessee and Chestnut & Smith, et al., in legal effect, or by operation of law, "surrendered" the original, or Cabin Valley lease. Not only does defendant say that said royalty owners were legally incapable of giving a new lease, but that the 1926 instrument was never intended to constitute one. In refutation to plaintiff's pointing out the present-day features of a Producer's 88 form of oil

and gas lease, which the 1926 instrument contained, and the 1908 instrument did not, defendant points out that the 1926 instrument provided for no primary, or fixed, term, and had no limited term drilling provision as new and complete oil and gas leases now usually do, her inference being that this demonstrates that the parties thereto did not regard their action as an attempt to create a new leasehold estate (which would have been inconsistent with the idea that one already existed, and might have estopped both them, and all subsequent purchasers from them, from contending the contrary) but were merely attempting to modify the conditions governing operation of the leasehold estate in the future.

We do not think that, under the circumstances, the execution and delivery to Carter of the 1926 "lease" constitutes any evidence of a surrender, or abandonment, of the 1908 Cabin Valley lease, to the extent of terminating or abolishing the leasehold estate and royalty interest therein that had existed therein for so many years previously and had been kept alive by continued production. If the trial judge was of a contrary view, he was in error.

■ We recognize the principle relied upon by plaintiff that a surrender of a previous lease, by operation of law, may occur by the parties thereto, or their successors, putting into effect a new lease, even though there may be no express agreement between them, or intent on their part to do so. Papoose Oil Co. v. Swindler, 95 Okl. 264, 221 P. 506; Peterson v. Betts, 24 Wash.2d 376, 165 P.2d 95, 106; Summers, Oil & Gas (Perm.Ed.) Vol. 3, secs. 524, 525; Willis', Thornton on Oil & Gas, Vol. 1, secs. 103, 104, 250, Vol. 2, sec. 382; Tiffany, Real Property, Third Ed., Vol. 4, sec. 962; Am.Jur., Vol. 32, "Landlord and Tenant", secs. 905, 910, Vol. 12, "Contracts", sec. 433. But, to have this effect, the new lease must be inconsistent with continued holding under the old one. In such case, the parties are estopped to deny that there has been a surrender of the previous lease. Though the case of Telford v. Frost, 76 Wis. 172, 44 N.W. 835, 836, was concerned principally with the operation of a statute, we think the court, in the body of its opinion therein, quite aptly and lucidly described the factors present in the situation, as follows:

"Such surrendering is nothing more than the effectual yielding up of such estate or interest to one having the immediate reversion or remainder wherein such particular estate or interest may emerge. To be effectual, however, such act or acts *must be inconsistent with the continuance of such former estate or interest,* and must, moreover, be actually accepted and acted upon by the other, and, in fact, all the parties concerned. When such acts and acceptance so concur, under such circumstances, the party thus surrendering is estopped from subsequently disclaiming the effectiveness of such surrender." (Emphasis ours)

And, in 32 Am.Jur., sec. 910, supra, it is said:

"It has been said that a mere modification of the terms of an existing lease does not constitute a new lease so as to operate as a surrender. It cannot be assumed or implied from such an agreement that a surrender of the old lease was contemplated by either party. The lease continues in full force except as it is modified by the agreement. It is preposterous to say that a reduction of the rent is a surrender of an existing lease and the granting of a new one. The new agreement in such case is virtually incorporated into and made a part of the antecedent agreement, and the two will constitute the lease for the unexpired term."

Under the terms of an oil and gas lease, payment to the lessor, or his successors, of a portion of the production obtained thereunder, is, for the purpose of the present issue, analogous to the "rent" paid the landlord by a tenant under other types of leases. The reduction of that "rent" from 23% of the total production, to one-eighth

or 12½% of it, by the Producer's 88 form of "lease" agreement, which the then owners of the royalty gave Carter in 1926, is not inconsistent with the continuance of their estate, or estates, in the leased premises; and our attention has been invited to no provision of said agreement that is. None of the cases cited by plaintiff supports a different conclusion. In all of them, in which a surrender was found to have occurred, the acts of the landlord, or owner of the proprietary estate, recognized a tenancy under a later instrument which was inconsistent with, or antagonistic to, any claim that the tenancy created by a previous lease, or grant, was still in existence, such as where the same owner executed and delivered a "top" lease to a third party, or stranger to the original lease, which was the case in Ferguson v. Commissioner of Internal Revenue, 10 Cir., 59 F.2d 891, or where he consented to the superseding of the original lease, entered into with his lessee, by a new one entered into with the lessee's assignee, as in Douglas v. Schindler, 209 Cal. 616, 289 P. 625.

In view of the foregoing, we must hold that the lease of June 29, 1926, could be no more than a modification of the then existing 1908 Cabin Valley lease on the land and premises involved herein; and that it effected no change in the rights, or interests, of the parties to this appeal, as between each other. As said by Mr. Summers, in Vol. 3A, at page 311 of his excellent Work, supra:

"One who purchases all or a portion of a lessor's reversionary interest in the oil and gas in the land, acquires no interest in the production under an existing lease and can only hope that the present lease will terminate before the minerals in the land are exhausted."

As plaintiff concededly purchased the land here involved subject to all rights under the oil and gas lease on the premises (and all interests or estates that had been created thereunder) and, under the law and evidence, said lease has never terminated, but still exists, together with the royalty interest, or estate, thereunder, plaintiff, as to the minerals under the land, owns only a reversionary estate, which carries with it an expectancy or possibility of a reverter to him, as such owner, of the royalty interest now owned by defendant, when, as and if the present lease is terminated. Accordingly, he is entitled to no royalty accrued, or payable, under said lease, and the trial court erred in holding to the contrary. Its judgment is therefore reversed and said court is directed to vacate it and render judgment for defendant, June H. Collins.