**WILEY, Gdn., v. GYPSY OIL CO.**

No. 15911—Opinion Filed Oct. 13, 1925.

Rehearing Denied Dec. 8, 1925.

1. **Guardian and Ward—Validity of Oil Lease by Guardian to Take Effect in Future.**

The guardian of a minor, under the supervision and direction of the county court having jurisdiction of the probate case, has power and authority, under the statutes and rules having the force of statutes prescribed by the Supreme Court, to lease the minor's land for oil and gas mining purposes to take effect in the future and at the expiration of an existing lease.

2. **Same—Procedure—Acceptance of Best Contract Offered Though Varying from Terms Advertised.**

Where the guardian of a minor files a pe-

tion in the guardianship case seeking authority to sell an oil and gas mining lease upon his ward's land, and the statutes have been followed and complied with as to giving notice and otherwise, and bids are made and offered in open court for an oil and gas lease contract upon the land, the county court and the guardian have the power, authority and jurisdiction, in the exercise of sound business judgment and discretion, and no fraud appearing, to accept and approve the highest and best bid most advantageous to the minor, although the bid is made for a contract varying somewhat from the terms of the contract advertised to be sold.

3. **Same—Validity of Lease Unaffected by Lessee Paying Guardian's Attorney's Fee.**

In guardianship proceeding for the sale of an oil and gas mining lease upon a minor's land, the mere fact that the successful bidder has agreed to pay or does pay the fee to the attorney for the guardian who conducts the preceeding is not sufficient, in the absence of fraud, to invalidate the proceedings or void the contract.

4. **Judgment Sustained.**

Record examined: and held, to support the judgment of the trial court; and that the judgment should be affirmed.

(Syllabus by Shackelford, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Tulsa County; Geo. C. Crump, Assigned Judge.

Action by Thomas J. Wiley, as guardian of Isabel Lewis, an incompetent, against Gypsy Oil Company, a corporation. From the judgment, the plaintiff appeals. Affirmed.

Neff & Neff, for plaintiff in error.

James B. Diggs, William C. Liedtke, and Redmond S. Cole, for defendant in error.

Opinion by SHACKELFORD, C. The plaintiff in error was the plaintiff in the trial court; and the defendant in error was the defendant. The parties will be referred to herein as plaintiff and defendant, as they appeared in the trial court.

This case involves the validity of an extension agreement extending an oil and gas lease upon the plaintiff's land. The plaintiff, Isabel Lewis, is a Creek freedman allottee, and to her was allotted, as a part of her interest in the lands of the Creek Nation, the east half of the northwest quarter of section 10, township 17 north, range 12 east, located in Tulsa county. She was enrolled on June 30, 1900, as two months old, and appears as No. 3438 on the final Creek freedman rolls. The enrollment record seems to

mean that she was born about April 30, 1900. On the 11th day of December, 1905, one Pompey Grayson was her legal guardian, and under the supervision and control of the Department of the Interior, said guardian leased the said land to one Robert Oglesby for oil and gas purposes from the date above stated to February 5, 1918, when by the terms of the lease it would expire. The royalty retained by the owner by this lease is one-tenth of the crude oil and $150 per year for each gas-producing well, certain acreage to be paid by the lessee year by year. Also, it was provided in the lease that upon the expiration thereof, any buildings and improvements, including casing in producing wells, became the property of the lessor, except certain buildings and other things expressly excepted. This lease afterwards became the property of the Gypsy Oil Company, which developed the same; and in October, 1916, it was producing oil and gas therefrom and was carrying out the terms of the lease. On the 25th of November, 1916, under the supervision of the county court of Muskogee county, in which the plaintiff, Isabel Lewis, lived, and in which county the guardianship case was pending, the then guardian of Isabel Lewis, one John M. Hobbs, entered into an extension agreement, whereby the terms and conditions of the lease above referred to were extended for a term of five years and so long as oil and gas should be produced in paying quantities, except that the royalty retained was increased to one-eighth instead of one-tenth as fixed by the original lease, upon crude oil produced, and one-eighth of six cents per 1,000 cubic feet as royalty on casinghead gas. The defendant had operated under this extension agreement from the time it was made until June 21, 1922, when this suit was filed.

The substance and effect of the plaintiff's petition is to allege that the oil and gas lease, under which the defendant took the property over and was producing oil therefrom, expired on the 5th of February, 1918; but the defendant unlawfully remained on the property and extracted oil and gas therefrom, and up to the 30th of May, 1922, had taken oil and gas to the amount of $89,733.20, and had paid over to plaintiff one-eighth of the amount, or the sum of $11,170.86, and had unlawfully appropriated the balance to its use. The prayer is for judgment for the sum of $78,562.34, with interest at 6 per cent. per annum from February 5, 1918. Copy of the original lease is attached to the petition. The defendant answered the petition by general denial and

by setting out the probate proceedings leading up to the extension agreement and confirmation thereof; and alleged that it is legally in possession, operating under and abiding by the terms of the extension agreement and has been since the date thereof. Copies of all the probate proceedings pertaining to the extension agreement are attached to the answer, as is also a copy of the original lease. The plaintiff replied denying each and every material allegation of new matter contained in the answer.

A jury trial was waived by stipulation and the case tried to the court, resulting in a judgment for the defendant. The plaintiff appeals, and presents assignments of error under two propositions:

"(1) The guardian had no lawful authority to execute the extension agreement relied upon by the defendant."

"(2) The extension agreement was invalid by reason of the fact that the defendant contracted to pay the fees of the attorney for the guardian and the court should have permitted evidence of such fact to be shown."

This action is an attack in the district court upon proceedings in probate in the county court. No extrinsic fraud is alleged or relied upon. The contention made is that the instrument, the extension agreement relied upon by the defendant, is absolutely void upon its face and upon the county court judgment roll. To determine the matter it becomes necessary to examine the county court proceedings and the instruments relied upon by the defendant in the light of the jurisdiction conferred upon the county court in matters of probate. The state Constitution confers original probate jurisdiction upon the county courts. Section 12 of article 7 provides:

"The county court, co-extensive with the county, shall have original jurisdiction in all probate matters," etc.

The probate case was pending in Muskogee county, the county in which the ward, Isabel Lewis, resided. The county court of Muskogee county conducted the probate proceedings out of which the extension agreement grew. Section 13 of article 7 of the Constitution provides what the powers of the county court shall be in probate matters. It reads:

"The county court shall have general jurisdiction of a probate court. It shall probate wills, appoint guardians of minors, idiots, lunatics, persons non compos mentis, and common drunkards; grant letters testamentary and of administration, settle accounts of executors, administrators and guardians; transact all business appertaining to the estates of deceased persons, minors, idiots, lunatics, persons non compos mentis, and common drunkards, including the sale, settlement, partition, and distribution of the estates thereof. * * *"

This court in Cabin Valley Mining Co. v. Hall, 53 Okla. 760, 155 Pac. 570, approved and adopted the language of the federal court in Mallen v. Ruth Oil Co., 230 Fed. 497, where the court said:

"The jurisdiction is full and complete so far as it relates to matters appertaining to business of the estates of minors, because it applies to all business of that character."

This statement seems to be consonant with the constitutional grant of power and jurisdiction to the county court in probate matters, and with all the decisions of this court where it has dealt with the subject of the jurisdiction of the county court in probate matters. It would appear, then, that the county court of Muskogee county had full and complete jurisdiction to supervise and control matters appertaining to the estate of Isabel Lewis, a minor, including the matters concerning the oil and gas lease upon her land. It would seem that under the constitutional provisions above referred to, and the decisions of this court, the guardian and the county court having jurisdiction of the probate case have substantially the same power to deal with the ward's estate as the ward would have if of adult age. At least, a very wide power is reposed in the guardian and the county court in such matters. In Cabin Valley Mining Co. v. Hall, supra, the court had under consideration the question of whether or not the guardian of a minor, under the supervision of the county court having jurisdiction of the probate case, had the power to make a valid oil and gas lease binding upon the ward beyond the date when the ward would reach his majority. The court said, concerning section 6547 Rev. Laws 1910 (section 1458, Comp. Stats. 1921):

"There is no limit in this section as to the terms of the lease, nor any limitation as to the time for which the same may run; it being left to the judgment of the court, in the exercise of a sound discretion, to determine what is best for the interest of the minor under the circumstances."

With the idea in mind that dealing with the ward's estate is within the sound discretion of the county court having jurisdiction of the estate, so long as such discretion is exercised within the law and established rules of the court, we will examine the record made in the county court as in-

corporated into the record of the trial in the district court.

We have heretofore stated that upon the plaintiff's land there was a departmental oil and gas lease executed by her guardian in 1905, and expiring February 5, 1918. On the 26th of October, 1916, the guardianship case was pending in the county court of Muskogee county, John M. Hobbs being the guardian. On said day the said guardian filed his petition in the guardianship case for authority to lease his ward's land for oil and gas mining purposes. After reciting the Creek freedman status of the ward, and allotment of the land involved to her, the petition recites the execution of the oil and gas lease expiring on the 5th of February, 1918, and that it is the property of the Gypsy Oil Company; that it has been extensively developed and oil and gas is being produced therefrom in paying quantities; that an offer has been made by the Gypsy Oil Company for a new lease extending for a period of five years from the date of the expiration of the former lease —that is, from the 5th of February, 1918 — and so long thereafter as oil and gas shall be found thereon in paying quantities; and that the Gypsy Oil Company has offered a cash bonus of $5,000 for the new lease, and from and after February 5, 1918, to pay a royalty of one-eighth of the oil to be produced, and to pay all expenses of the proceedings; that such new lease upon the terms named would be to the best interest of the ward, and prays that an order authorizing sale of the oil and gas lease, taking effect at the expiration of the old lease, to run for five years and so long as oil and gas is produced in paying quantities, be made. Upon a hearing of the petition so filed, the county court made an order authorizing the sale of an oil and gas lease of the character described in the petition. The order recites that the hearing was upon the petition and evidence, and that the court found it would be to the best interest of the minor to sell such a lease upon her property. The order made provision that such lease should provide for a royalty of not less than one-eighth of the oil produced and saved, and to be sold on terms most advantageous to be obtained for the ward, and at a cash bonus of not less than $5,000; that the sale should be made in the county court room at 2 p. m. on the 31st of October, 1916. Also, the order provided for the character of notice to be given, and provided that the sale should be subject to the confirmation, acceptance, and approval of the guardian and of the court. At the time of authorizing the

sale, the court appointed appraisers to appraise the value of an extension of the oil and gas lease such as was proposed. The appraisers so appointed resigned, and other appraisers were appointed. On the day fixed for the sale, the time for holding same was continued to the 14th of November, 1916, at 2 p. m. Notice of the sale was given as provided by orders of the court. The regularity and sufficiency of the notice, or the manner of giving the notice, is not attacked. The notice given was to the effect that an oil and gas lease upon the land described, running for five years from the 5th of February, 1918, and so long as oil and gas is produced in paying quantities, would be sold, the bonus to be not less than $5,000, and at a royalty of not less than one-eighth of the oil production. On the 14th of November, 1916, the matter was continued to November 18, 1916. On the 18th of November, 1916, the guardian filed a petition for leave to withdraw the petition seeking to sell a five year lease; and also the Creek national attorneys and the United States probate attorney for Muskogee county filed a protest against approval of an extension lease upon the land. It seems that on the 18th of November, 1916, the matter came on for hearing in the county court, and bids on the extension lease being called for in open court, the defendant here, Gypsy Oil Company, submitted two bids. The first was to pay a bonus of $8,500, one-eighth royalty on oil production and one-eighth of six cents per 1,000 cubic feet for casinghead gas; such royalties to take effect and be payable from and after the termination of the old lease. The second bid was to pay a bonus of $8,000 and the royalties, the same as in the first bid, except that the royalties were to become effective at the time the bid should be accepted. The Creek national attorneys and the United States probate attorney were present and asked to continue the hearing for further evidence before the matter was closed; and the hearing was further continued to November 25, 1916. On that day further hearing was had, but no further evidence offered by the Indian or probate attorneys. In the meantime, the appraisers appointed by the court had returned an appraisement of the value of the extension lease. This appraisement was before the court on the 25th of November, 1916. Bids were again called for in open court, and the Gypsy Oil Company renewed the bids above referred to. The appraisement then before the court fixed the value of the character of lease advertised to be sold, at $8,500, and royalty at one-eighth. The first

of the two bids referred to seems to have been the amount of bonus and royalty which the appraisers said in their return was the value of the character of lease advertised to be sold, or substantially that. The court had before him two bids, one upon the lease as advertised to be sold, and the other at $500 less in the amount of bonus, but increasing the royalty at 2½ per cent. from the date of acceptance of the bid, which would have the effect of giving the lessor an additional 2½ per cent. royalty on the production from November 25, 1916, to February 5, 1918, or for about 15 months. The court accepted the less amount of bonus and the higher royalty, confirmed the sale, and ordered the lease extension agreement executed by the guardian, and the extension agreement was accordingly entered into between the guardian and the purchaser. The Creek national attorneys and the United States probate attorney gave notice of appeal to the district court in due form, but the appeal was never filed. Thus the order of confirmation of the extension agreement became final. The record seems to show that no bids were made except by the Gypsy Oil Company. The one bid to pay the sum of $8,500 and one-eighth royalty after the expiration of the former lease was upon the character of lease advertised to be sold; and from a study of the record, it appears that such bid was slightly more advantageous to the bidder than was the second bid made. It is not clear from the record what difference there was in the two bids, but if any difference, the second bid was more favorable to the lessor. The difference might have been as much as a few hundred dollars, but the exact amount is uncertain.

The first question to be determined seems to be whether or not the guardian of the minor, under the supervision of the court, could sell on the 25th of November, 1916, a valid oil and gas lease on the ward's land to take effect on the 5th of February, 1918, at the expiration of the former lease, and run for five years and so much longer as oil and gas were found in paying quantities. It seems to be clear that the matter of handling this ward's property· was in the control of the guardian and the county court, under the state statutes and prescribed rules. Under section 1458, Comp. Stats. 1921, the guardian was authorized to convey an oil and gas grant in consideration of a royalty to be paid out of the production under the same procedure as where the consideration is to be paid in money. There seems to be no statutory inhibition against leasing the ward's land for oil and gas pur-

poses, whether the grant is effective at once or in the future. It seems to be clear that an adult might lease his land for oil and gas mining purposes to take effect in praesenti, or in futuro, or at the expiration of an existing lease, where no statutory restriction had been imposed. However, in cases of minors or incompetents, the court here very properly concluded that no authority was conferred upon the guardian, or jurisdiction reposed in the county court, to dispose of oil and gas leases in such a manner as to prevent or chill competitive bidding thereon. To make this matter plain and easily understood, and because the statute was lacking in prescribing procedure, this court promulgated rule 9, which reads:

"No oil and gas or other mineral lease, covering lands belonging to minors or incompetents, will be approved except after sale in open court to the highest and best responsible bidder. All petitions for the approval of oil and gas leases shall be filed five days before the same are sold as provided herein. And notice of such sale must be given by posters and by publication where the publication is practicable."

This rule was held in Winona Oil Co. v. Barnes, 83 Okla. 248, 200 Pac. 981, and in Carlile v. National Oil & Development Co., 83 Okla. 217, 201 Pac. 377, to have the force and effect of a statute. Under this rule, the petition for authority to sell must be filed at least five days before the sale, and notice must be given by posting notices and by publication when practicable; and the sale must be made in open court and to the highest and best bidder. Every element of this rule was complied with in the matter under consideration up to the point of making the bid of $8,500 bonus and one-eighth royalty on production, for an oil and gas mining lease to take effect at the expiration of the existing lease, and to run for five years and so much longer as oil and gas should be produced in paying quantities. If the court and guardian had accepted such bid and the guardian had executed such lease under the direction of the court, it seems that it would have constituted a valid, subsisting lease, if the guardian and the court had the power and authority to make a lease to begin at the expiration of the existing lease. In Carlile v. National Oil & Development Co., supra, the court had under consideration a contract extending and modifying the terms of an oil and gas lease. The court here seems to have examined the agreement made as if a new lease, to begin and take effect at the expiration of the existing lease. The court said:

"They * * * extended the terms of the old lease, which had the same effect as the sale of a new lease to begin and be in effect at the end of the term of the old lease."

The modification and extension agreement was nullified by the court, as we understand the opinion, for the reason that rule 9, promulgated by this court, was not complied with. The reasoning in the opinion leads us to think that the contract would have been upheld if the transaction had been free from fraud and there had been compliance with rule 9 of this court. In Papoose Oil Co. v. Swindler, 95 Okla. 264, 221 Pac. 506, this court had under consideration an extension agreement extending the terms of a departmental oil and gas lease so long as oil and gas should be found in paying quantities. The original lease was executed in 1907, and to run until the minor should reach his majority. Before the expiration of the lease, the guardian executed the extension agreement. The extension agreement was a private arrangement between the leaseholder and the guardian of the minor, and was approved by the county court having jurisdiction of the guardianship case. The agreement was made and approved prior to the promulgation of rule 9 of the Supreme Court. The extension agreement was adjudged by the district court to be invalid and the lesssee appealed. The court here held the extension agreement to be valid and binding, and reversed the trial court with directions to enter judgment for the lessee. Both of the above cited cases follow Cabin Valley Mining Co. v. Hall, supra. The main question discussed and decided in the Cabin Valley Mining Company Case was whether or not the guardian, under the supervision of the county court, has the power to execute a lease extending beyond the minority of the ward. Involved in that case was also an extension agreement extending the terms of a former lease. The holding in that case, as we read it, is to the effect that the county court has power and jurisdiction to approve an extension agreement in a proper case. A study of the constitutional and statutory provisions conferring probate jurisdiction upon the county court, together with a study of the cases cited, leads us to the conclusion that if the county court and the guardian had accepted the defendant's bid of $8,500, and the increase in royalty to take effect at the expiration of the former lease, an extension agreement on such basis would have constituted a valid contract, although by its terms it would be made to take effect in the future.

Such bid was not accepted, but in lieu thereof the second bid was accepted. We have heretofore seen that the second bid was $8,000 and the increase in royalty to take effect at once. We have also seen that the second bid was somewhat more advantageous to the ward than the first bid. Then, the question arises as to whether or not the county court and the guardian could lawfully substitute a contract more advantageous to the ward for the one which the law would authorize and require the court to unhold if it had been entered into. The contract that was made by the guardian under the supervision of the court amounted to paying the defendant $500 for an additional royalty of 2½ per cent. of the oil production to run through the time from making the contract until the 5th of February, 1918. It seems that if the first bid had been accepted and the contract made upon that basis, there is nothing in the probate law which would have prevented the guardian, with the consent and approval of the county court, from investing the sum of $500 in buying additional royalty to be paid out of the oil production. It seems that the whole spirit of the law, as well as the letter, is to protect the interests of minors in their property. The direct purpose of the court in promulgating rule 9 concerning sale of oil and gas leases upon minors' land was to bring about a condition whereby the minor would get the highest and best bid that any investor would want to offer for the lease. It seems that the duty of the county court and the guardian, in dealing with the business of a minor, is to make such deals as are more advantageous to the minor; and to fail in this respect would be more or less of a dereliction, according to the circumstances. In this connection we again revert to the language of this court in Cabin Valley Mining Co. v. Hall, supra, where it is said:

"It being left to the judgment of the court, in the exercise of sound discretion, to determine what is best for the interests of the minor under the circumstances. * * *"

In Papoose Oil Co. v. Swindler, 95 Okla. 264, 221 Pac. 506, this court quoted with approval the following language from the case of Tibbens v. Clayton, 288 Fed. 393:

"The guardian, however, not only at common law, but also here, is required to exercise good faith in the making of said lease."

In that case the court quoted as applicable to the making of oil and gas lease contracts, a part of section 5513, Comp. Laws 1909 (section 1482, Comp. Stats. 1921):

"The county court may make such other orders and give such directions as are needful for the management, investment, and disposition of the estate and effects as circumstances require."

There seems to be no statute which in direct terms directs the guardian and county court what course to pursue in circumstances such as are here presented. Nor have we been able to find any case where the same situation has been presented, and no such case has been cited in the briefs. However, it seems clear that the whole purpose and intendment of the probate law is to require the court and the guardian to exercise good business judgment and sound discretion in dealing with the estates of minors; and in the exercise of such discretion, it becomes the duty of such agencies to make the most advantageous terms that can be made when dealing with the minor's estates. It seems unreasonable that the court and guardian might accept the highest and best bid offered for the character of contract advertised and make a valid binding contract, and yet have no power, jurisdiction or authority to accept a higher and better bid more advantageous to the minor, upon a contract varying somewhat the terms of that advertised to be sold. It seems that to so hold would not comport with the spirit of our probate system. The first bid made by the defendant was for a lease contract upon which any oil investor might have bid. The second and better bid was for a character of contract upon which none other than the defendant might have safely bid, but surely that alone would not prevent the court and guardian from accepting the better bid. The character of contract which was advertised for sale was open for any other investor to bid upon, as well as defendant. The guardian and the court could not have sold to any other than the defendant the character of lease embodied in the contract which was made; that is the oil and gas lease to take effect at once, since the defendant was in possession under a valid lease with some 15 months to run. It seems that if the character of contract which was sold had been advertised for sale, bidders would have been limited to defendant alone, and the spirit and purpose of the law would have been thwarted, and having the sale in open court would have become a mere empty form.

From the above we reach the conclusion that in the absence of fraud, the county court and the guardian had the right, power, authority, and jurisdiction to accept the better bid and make the contract that was made. No fraud was alleged and none proven. The record seems to support the conclusion that the court, the guardian, and the defendant acted in the matter in good faith. The court appointed appraisers to appraise the value of the contract advertised to be sold. The appraisement was returned so that the court had it for his guidance at the time of accepting the bid and confirming and approving the contract between the guardian and the bidder. Two bids were made, and the record seems to show that the court accepted the one most advantageous to the ward, as it was his duty to do in the exercise of sound judgment and discretion.

The plaintiff's second contention is that the contract was invalid for the reason that the defendant contracted to pay the fees of the attorneys for the guardian; and that the trial court committed reversible error in refusing to let the plaintiff prove that such agreement had been made. Upon this contention plaintiff urges that a servant cannot serve two masters—that the attorney for the guardian was in the pay of the defendant, or had an agreement with the defendant to pay the fee, and therefore the extension agreement was void and should be canceled; or, at least the court here should reverse the judgment and direct a new trial so that plaintiff may develop the facts concerning the agreement to pay the fee of the guardian's attorney. Upon the trial in the district court plaintiff offered to prove that defendant had agreed to pay the fee of the attorney who conducted the proceedings for the guardian in the county court; and the trial court refused to consider such evidence on the theory that it was immaterial.

It seems that whether or not such evidence was material depended upon the issues to be tried as made by the pleadings. The plaintiff charged in her petition that defendant was holding over after the expiration of its lease and was wrongfully and unlawfully converting seven-eighths of the oil produced from her land. The defendant answered alleging that it was in possession under a valid lease contract setting up the entire probate proceedings which culminated in making the contract on which defendant relies; and offered the probate proceeding and the contract by way of refuting plaintiff's charge that defendant was unlawfully appropriating seven-eighths of the oil. Plaintiff answered defendant's affirmative defense by general denial. The position taken by plaintiff under the pleadings is that no such probate proceedings were ever had and no such contract as defendant relies upon was entered into. There is no allega-

tion in the plaintiff's pleadings that the proceedings in the county court were fraudulently conducted and the contract upon which defendant relies was fraudulently entered into, or that in making such contract the court was misled or the plaintiff overreached and wronged by reason of the guardian's attorney fee being paid by defendant or for any reason. Where a litigant relies upon fraud to vitiate guardian proceedings and to cancel and set aside a contract, the fraud must be both alleged and proven. But the plaintiff insists that it was agreed that the pleadings should be amended or treated as amended. The record shows that a stipulation was made by the court and agreed to by the parties, and is as follows:

"The Court: It is hereby stipulated and agreed by and between the parties hereto that the petition may be amended to conform to the facts as to the amount of oil run by the defendant."

This stipulation does not seem to be sufficiently comprehensive to permit proof of matters entirely outside of the issues presented by the pleadings. But it appears that plaintiff's attorney did not know or did not realize that any significance should be attached to the payment of the guardian's attorney fee until the trial was in progress. No leave was asked or granted to amend the plaintiff's pleadings to cover the facts concerning payment of the fee, and it seems that it would not be sufficient to charge that a fee was paid or agreed to be paid by the defendant; but it would be necessary to go further and allege that such agreement had the effect of misleading the court or resulted in perpetrating a wrong upon the minor. The plaintiff offered to prove that defendant had agreed to pay the guardian's attorney fee; but no offer seems to have been made of any evidence tending to show that the court was misled or the minor or her guardian overreached by reason of such agreement; or that a secret agreement was made to pay the fee and an unwise or improvident contract resulted from such secret agreement. The guardian in his petition for authority to sell the lease contract advised the county court that defendant had offered a certain bonus, an increased royalty, and to pay all expenses of the proceedings. On the trial of plaintiff's case in the district court, she called as a witness the attorney for the guardian in the probate proceedings, and he testified that defendant paid the expenses of the guardianship proceedings, but afterwards stated the defendant still owed him $125. Thereupon plaintiff made the offer to show that in advance

of the sale defendant had agreed to pay the expenses, including attorney's fee, and the agreement had been carried out except as to part of the attorney fee. It seems that such proof was already in the record. It is plain, however, that the court did not consider such evidence material to the issues joined by the pleadings. We are of the opinion that it was not material; and are further of the opinion that the mere fact that defendant agreed to pay the expenses of the probate proceedings, including the fee to the attorney for the guardian, or that such agreement was carried out in whole or in part, would not void the contract, in the absence of a showing that such agreement in some way tended to mislead the court into approving a contract when it should not have been approved or caused an unwise and improvident contract to be made adversely affecting the rights of the minor. No such showing appears from the record, and no such showing was offered to be made by plaintiff in pleadings or evidence.

After a careful examination of the record we conclude that no reversible error appears.

The judgment should be affirmed.

By the Court: It is so ordered.

Note.—See under (1, 2, 3) 28 C. J. p. 1207, § 362.  (4) 4 C. J. p. 1129, § 3122.