**CARTER OIL CO. v. FLEMING et al.**

No. 15661—Opinion Filed March 9, 1926.

**Guardian and Ward—Authority of Guardian to Compromise Property Right with Approval of Court—Binding Effect.**

In the absence of a statutory or constitutional provision to the contrary, a guardian, by and with the approval of the county court having jurisdiction of the estate of his ward, may compromise any controversy or litigation involving the estate of such ward; and such compromise will be binding upon the ward when it is made for his best interest and in good faith; and the subject-matter of the compromised controversy or litigation cannot be relitigated by the ward.

(Syllabus by Jarman, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Carter County; W. F. Freeman, Judge.

Action by Christina E. Fleming, nee Bennett, et al. against the Carter Oil Company. Judgment for plaintiffs, and defendant brings error. Reversed and remanded, with directions.

James A. Veasey, L. G. Owen, Walter Davison, R. A. Hefner, H. A. Ledbetter, and C. M. Oakes, for plaintiff in error.

Rainey & Flynn and R. L. Disney, for defendants in error.

Opinion by JARMAN, C. This was an action by Christina E. Fleming, nee Bennett, a duly enrolled Choctaw Indian of one-sixteenth degree of Indian blood, to cancel two oil and gas leases upon a 50-acre tract of land located in Carter county, which was acquired by proceeds derived through a guardianship sale of her allotment. Thomas Bennett, as guardian of the plaintiff, Christina E. Bennett, a minor, sold, through the county court of Carter county, on May 15, 1916, an oil and gas lease on said 50 acres of land, and pursuant to said sale and the order of court confirming same, the guardian executed said oil and gas lease to S. W. Tyer for a term of five years, and as long thereafter as gas or oil should be produced in paying quantities. W. T. Bennett succeeded Thomas Bennett as guardian of said minor, and on June 15, 1919, sold and executed to I. M. Roberts, through the county court of Carter county, an oil and gas lease on 100 acres of land belonging to said minor, including the 50-acre tract theretofore leased to S. W. Tyer, for a term of five years, and as long thereafter as oil or gas should be produced in paying quantities, for a consideration of $2,500.

On July 19, 1919, the minor, by her guardian, W. T. Bennett, joined by I. M. Roberts, purchaser of the latter lease, brought an action in the district court of Carter county against Tyer for the cancellation of his lease on the ground that the rental, due May 15, 1919, had not been paid as required by the terms of his lease. On November 13, 1919, W. T. Bennett, guardian, filed an application in the county court to vacate the order confirming the sale of the lease to Roberts on the ground that the full consideration had not been paid, alleging that $1,250, one-half of the consideration, had been placed in escrow in the bank to be paid conditionally upon the cancellation of the Tyer lease.

On December 12, 1919, a hearing was had in the county court of the proceeding to vacate the order confirming the Roberts lease, and the matter was taken under advisement until December 23, 1919, when the court made a finding in favor of the defendant Roberts, and ordered that the $1,250, the one-half of the bid made by Roberts, and which had been tendered in court in that proceeding, be turned over to and accepted by the guardian, which was done.

On January 2, 1920, the guardian filed a petition in the county court for authority to compromise the proceeding to vacate the order confirming the sale of the lease to Roberts, and also the action brought in the district court by the guardian and Roberts to cancel the Tyer lease, and alleged that an agreement had been reached whereby the second lease, the Roberts lease, could be sold for as much as $75,000, and that the holders of the two leases had agreed to pay to the guardian for the use and benefit of the ward, one-third of such sums as could be obtained by the lessees for said leases.

About February 19, 1920, the Carter Oil Company, defendant, became interested and made an agreement to purchase both the Tyer lease and the Roberts lease for a consideration of $92,500, and the proposition was submitted to the county court in a petition filed by the guardian on February 21, 1920, and said court made an order approving the transaction and authorized the guardian to dismiss the action in the district court and the proceeding in the county court upon payment to him for the use and benefit of his ward one-third of said sum. Pursuant to said agreement and to the orders of the county court, the Carter Oil Company paid to the guardian one-third of the consideration, $92,500, and one-third thereof to each of the holders of said leases and took assignments of both leases. The guardian dismissed the actions in the county and dis-

trict courts. Upon the consummation of this transaction, the Carter Oil Company, at the request of the guardian, filed of record a release of the Tyer lease, in order that there would be no confusion about which lease the Carter Oil Company would operate under, and for the further reason that the terms of the Roberts lease were more advantageous to the minor.

The Carter Oil Company entered upon the lands in question and has been producing oil therefrom in paying quantities since April 9, 1921.

The plaintiff was married, prior to her majority, to W. C. Fleming, who succeeded W. T. Bennett as her guardian. The plaintiff arrived at her majority on April 9, 1923, and on April 30, 1923, this action was instituted against the Carter Oil Company, I. M. Roberts, and S. W. Tyer, and thereafter, L. O. Addie and others were made parties defendant. Upon a trial, the court rendered judgment canceling both oil and gas leases in their entirety, from which the defendant Carter Oil Company has appealed.

There are numerous assignments of error urged, all of which are ably and exhaustively briefed and discussed by counsel for both sides; but, in our view of the case, it is necessary to consider only one proposition, to wit: Did the county court of Carter county have jurisdiction to authorize the compromise or settlement of the controversies relative to the Tyer and Roberts leases?

The county court, coextensively with the county, has jurisdiction in all probate matters and shall transact all business appertaining to the estates of minors. Sections 12 and 13, art. 7, Constitution. Unless otherwise ordered, a guardian appointed by the county court has power over the person and property of the ward. Section 6586, C. S. 1921. The county court, making the appointment, has exclusive jurisdiction of the management as well as the disposition of the property of his ward. Section 6583, C. S. 1921. The clear intention of these provisions of the statute and of the Constitution is to give to the county court and to the guardian a very wide discretion in dealing with the estate of a ward, and their acts in exercising such discretion, in the absence of fraud or of a statute providing otherwise, will not be disturbed when it is exercised to the advantage and best interest of the ward. This principle is illustrated by the holding of the court in the case of Cabin Valley Min. Co. v. Hall, 53 Okla. 760, 155 Pac. 570, where the question was involved as to the jurisdiction of the county court to authorize the

making of a valid oil and gas lease beyond the date of the majority of the ward, and in disposing of the question the court said:

"There is no limit in this section (sec. 1458, C. S. 1921), as to the terms of the lease nor any limitation as to the time for which the same may run; it being left to the judgment of the court in the exercise of sound discretion, to determine what is best for the interest of the minor under the circumstances."

In recognition of this principle, this court in the case of Wiley, Guardian, y. Gypsy Oil Co., 115 Okla. 120, 242 Pac. 189, in an opinion filed October 13, 1925, used the following language:

"It would seem that under the constitutional provisions above referred to and the decisions of this court, the guardian and the county court having jurisdiction of the probate case have substantially the same power to deal with the ward's estate as the ward would have if of adult age."

We have no statute restricting the power of guardians to compromise, nor the jurisdiction of the county court exercising probate jurisdiction to approve compromises or settlements made by the guardian on behalf of his ward. In the absence of such restriction, a guardian has authority to compromise a claim existing in favor of his ward if he acts in good faith (28 C. J. 1123); and, unless the guardian has an interest adverse to that of the ward he has general authority to submit to arbitration questions and controversies respecting the property and interests of his ward (28 C. J. 1125).

The case of Hagy v. Avery (Iowa) 28 N. W. 408, involved the question of the power of the guardian and the jurisdiction of the court to compromise a controversy in which the ward was interested, which depended upon the construction to be given to section 2250 of the Iowa Code, providing that:

"Guardians of the property of minors must prosecute and defend for their wards. They must also in other respects manage their interests under the direction of the court. They must thus lease their lands or loan their money during their minority, and may do all other acts which the court may deem for the benefit of their wards."

The Iowa court held that said statute was ample to confer upon the guardian the power to compromise a pending suit if it were done under the authority and approval of the court, and, in this connection, the court used the following language:

"* * * The only limit to the guardian's authority is that before the compromise can be legally made authority from the court must be obtained."

It will be observed that our statutory and constitutional provisions, hereinabove referred to, are in effect as broad as the statute of Iowa with respect to the management and disposition of the estates of wards.

In the case of Manion v. Ohio Valley Ry. Co., 99 Ky. 504, 36 S. W. 530, the court said:

"Without statutory restraint a guardian may compromise, settle, and release claims and demands due to or made by or on behalf of his ward, and the ward will be bound thereby unless it is done in bad faith or in fraud of his rights."

In the case of Thompson v. Maxwell Land Grant Co., 168 U. S. 451, 42 L. Ed. 539, the following state of facts was involved: The heirs of Charles Bent commenced an action in the district court of Taos county, N. M., against Maxwell and others for an interest in a large tract of land known as the Maxwell land grant. The plaintiffs were adjudged to be owners of an undivided one-fourth interest in said land, and commissioners were appointed to partition the same. Before any steps were taken by the commissioners to partition the land, negotiations for a compromise and settlement of the litigation were commenced by the parties on the basis of Maxwell paying to the plaintiffs $18,000 to relinquish their claim, but before the compromise was made one of the plaintiffs died, leaving his widow and three infant children. The action was revived in the names of the heirs of the deceased plaintiff, and a guardian ad litem and commissioner in chancery was appointed for the minor plaintiffs. The compromise agreement was consummated, whereby the plaintiffs, including the minors, were to convey to the defendants their undivided one-fourth interest in the grant for $18,000, and said compromise was approved by the court, directing the guardian ad litem to convey to the defendant, Maxwell, the interest of said minors. Thereafter the defendants conveyed the land to the Maxwell Land Grant Company, which instituted suit to quiet title; and, in that action, the compromise of the former action and the consent decree entered by the court were attacked by the defendants. In upholding the compromise and sustaining the decree, Mr. Justice Brewer, speaking for the court, quoted with approval the language in the case of Walsh v. Walsh, 116 Mass. 377, as follows:

"An infant is ordinarily bound by acts done in good faith by a solicitor or counsel in the course of the suit to the same extent as a person of full age, * * * and a compromise appearing to the court to be for the benefit of an infant will be confirmed without reference to a master; and if sanctioned by the court cannot be afterwards set aside except for fraud."

And in commenting further on this question, Mr. Justice Brewer, in the body of the opinion, said:

"Ordinarily, indeed, a court before entering a consent decree will inquire whether the terms of it are for the interest of the infants. * * * It would be strange indeed if when those authorized to represent minors acting in good faith make a settlement of claims in their behalf and such settlement is submitted to the proper tribunal and after examination by that tribunal is found to be advantageous to the minors and approved by decree entered of record, such settlement and decree can thereafter be set aside and held for naught on the ground that subsequent disclosures and changed conditions make it obvious that the settlement was not in fact for the interests of the minors and that it would have been better for them to have retained rather than compromised their claims. If such a rule ever comes to be recognized it will work injury rather than benefit to the interests of minors, for no one will make any settlement of such claims for fear that it may thereafter be repudiated. The best interests of minors require that things that are done in their behalf, honestly, fairly and upon proper investigation and with the approval of the appropriate tribunal, shall be held as binding upon them as similar actions taken by adults."

In the absence of a statute, it is clearly to be seen from the foregoing authorities that a guardian, by and with the consent and approval of the county court, may compromise or be a party to a consent judgment, and the controlling factor in such matter is whether the guardian acted for the best interests of the ward. This principle has been recognized by the Supreme Court of this state in the case of Verdine et al. v. Cosden & Co. et al., 96 Okla. 52, 220 Pac. 329. That case involved the validity of a guardianship sale of real estate of a minor. At the time of the filing of the petition to sell, the minor was vested with only a one-half interest in the real estate, but before the sale was confirmed the entire interest in said real estate became vested in the minor. The contention there was that the sale was void as to a one-half interest in said land. It appears that after the case was appealed to this court, the minor, by and through her guardian, and the other parties interested compromised and entered into an agreement to settle the litigation, which was approved by the county court having jurisdiction of the guardianship proceedings, and in disposing of the case on appeal the court, speaking through Mr. Justice Branson, said:

"We deem it unnecessary to go into the

discussion of the facts out of which this litigation grew or the assignments of error made by the plaintiffs in error, for that the plaintiffs in error, with the approval of the county court having the jurisdiction of the settlement of their estates and their guardians, joined by their counsel, for a sum of money specified, have entered into an agreement satisfactory to the respective parties. * * * Without regard to the merits, we are of the opinion that the settlement is to the best interest of the minors, and that the motion to affirm the judgment of the trial court should be sustained and the judgment of the trial court should be affirmed."

The purpose of having a guardian is to enable one, who is not able to act for himself, to transact business and look after his interests. It is the method of placing a minor on the same basis as an adult, in respect to the handling and managing of his property. An adult may compromise or settle controversies involving his estate, and there is no reason why a guardian, with the approval of the county court, may not do likewise with respect to the estate of his ward. The purpose and intent of the law would be defeated, if a controversy or litigation involving the estate of a ward could not be compromised; because it may often happen that, by the time the litigation is finally terminated in the several courts, the once valuable interests of the ward may have become worthless or dissipated. The instant case illustrates that condition. Here, wells were being drilled in close proximity to the lands of the ward, which would be completed long before the litigation involving the leases on the ward's land could be settled; and, if the wells should be dry, the leases on the ward's land would be worthless, and besides the litigation might have resulted adversely to the ward. The guardian had an opportunity to settle or compromise the litigation at a handsome profit of over $30,000 to his ward. The record discloses that the entire transaction surrounding the compromise was in the very best of faith on the part of the guardian and all parties concerned, and that said compromise was advantageous and to the best interests of the minor; and there being no statutory or constitutional provision preventing the making of such compromise and settlement of the litigation on behalf of the ward, the same is valid and binding upon the ward and said ward cannot subsequently litigate the questions involved in the controversies thus compromised.

Counsel for plaintiff insist that the case of Tidal Oil Co. v. Flannigan, 87 Okla. 231, 209 Pac. 729, is decisive of the question here involved, which holds that restricted Indian lands can be conveyed only in the manner authorized by federal statute, and that a valid oil and gas lease on such land can be had only by complying with the statute and the rules of this court. We think that case is readily distinguishable. In that case, the allotment of a minor Creek freedman was involved. The minor allottee had his majority rights conferred, and executed an assignment of the oil and gas royalties upon his allotment, and a deed to portions of his allotment and an option contract for the sale of the other portion. Thereafter he filed an action in the district court of Creek county to cancel the conveyances made. He then had a guardian appointed, who attempted to settle the litigation, and under the terms of the settlement the lands were to be reconveyed to the allottee, but the oil and gas leases executed by Arnold and others, after they had received conveyances from the allottee while he was a minor, were ratified and confirmed by the guardian, and this agreement of settlement was approved by the county court of Creek county. Under the compromise settlement, the allottee was to receive one-fourth of the royalties accruing upon the lands under the leases executed by Arnold and others. In the body of the opinion, it is said that counsel for plaintiffs in error insist that the compromise settlement between the guardian and Arnold, approved by the probate court, is valid, and in commenting on this proposition the following language is used:

"We have no fault to find with this rule of law, but the rule has no application to the facts in the case at bar. The guardians of Marshall and Arnold, Hymans and Lawson, in entering into the compromise agreements, were attempting to make agreements conveying an interest in restricted allotted Indian lands. Such lands may not be conveyed or title acquired except in the manner prescribed by law. * * * Parties in dealing with restricted Indians with respect to restricted allotted lands will not be permitted to secure conveyances in violation of applicable statutes prescribing the manner by which such lands may be alienated and then institute litigation and make compromise agreements with reference to such fraudulent and void transactions in furtherance of a scheme to acquire title to such lands in a manner not authorized by law."

That case has no bearing on the question of compromise involved in the instant case, for it merely holds that restricted lands of an Indian allottee can be conveyed only in the manner authorized by federal statute, and that since there is no such statute authorizing such lands to be conveyed, nor a void oil and gas lease executed in violation

of the law to be made valid by compromise, such procedure is ineffectual to convey title or validate the lease. There is no contention in the instant case that a valid lease could be procured in any way except in conformity with the statutes and rule 9 prescribed by this court. The leases in question, which were assigned to the defendant, were executed in conformity with the requirements of the statute and said rule 9. But in the Tidal Oil Co. Case no attempt was made to comply with the statute and the rules of this court in the making of oil and gas leases.

There is another distinction between the Tidal Oil Co. Case and the instant case. There the allotment of a minor allottee was involved, making the same subject to federal supervision through the county court exercising probate jurisdiction as provided by section 6, Act of Congress May 27, 1908; while in the instant case, the lands involved do not constitute any portion of the allotment of the minor allottee, being lands purchased with proceeds derived from such allotment, and said lands do not come within the purview of said section 6, as held by this court in the case of Tuck v. Sanders, in an opinion filed November 17, 1925, 116 Okla. 218, 244 Pac. 31.

For the reasons given, the judgment of the trial court is reversed and the cause remanded, with directions to render judgment for the defendant Carter Oil Company.

By the Court: It is so ordered.

Note.—See under (1) 28 C. J. p. 1124 §206; 12 R. C. L. p. 1125; 4 R. C. L. Supp. p. 786.