## DERRISAW v. SCHAFFER et al.
### No. 4434.

District Court, E. D. Oklahoma.
Oct. 26, 1934.

Charles G. Watts, of Wagoner, Okl., and John B. Meserve, of Tulsa, Okl., for plaintiff.

M. E. Turner, of Eufaula, Okl., J. E. Thrift, of Sapulpa, Okl., and John Rogers, Wm. F. Semple, and Geo. S. Ramsey, all of Tulsa, Okl., for defendants.

WILLIAMS, District Judge.

The first and second amended bills, each entitled bill in equity or bill of review, but being a proceeding in equity to set aside and annul a judgment of this court on the ground of mistake and fraud, which bills have been superseded by the second amended bill and are therefore treated as abandoned. The allegations of fraud in the second bill, with the exception of the allegations in paragraph 4, are mere conclusions. Paragraph 4 alleges the recital in the compromise agreement submitted to Judge R. E. Campbell, at that time the United States District Judge for this district, that "some of the questions involved are questions of law that have never been decided by any court of competent jurisdiction within the knowledge of either party to this action," was false, and misled and deceived Judge Campbell into rendering a consent decree, all of which is denied by the defendants. In the original cause of action No. 1970, in which the so-called decree was entered, the bill alleged that Sarah Derrisaw, plaintiff's mother, "departed this life unmarried and intestate on or about the ——— day of March, 1904; that the said Sarah Derrisaw was never married." The question was thereby raised that, if the complainant was a bastard, his father inherited nothing under the controlling law of descent and distribution, and the deed to Smock, under which defendants claim, would have been void because there was no adult heir to join with the guardian of the minor, as required by section 22 of the Act of Congress of April 26, 1906 (34 Stat. 137, 145). The answer in said case, equity No. 1970, filed May 12, 1913 (Defendants' Exhibit 4), put that allegation in issue and averred: "That upon the death of Sarah Derrisaw in the year 1904, her husband, Barney Derrisaw, became vested with a life estate in her entire allotment, and that subject to said life estate the fee to said lands constituting her allotment, passed to and vested

in her three children Fannie Derrisaw, Tuxey Derrisaw and Beeley Derrisaw, each being entitled to an undivided one-third interest therein subject to the life estate of said Barney Derrisaw in the whole of said allotment." The issue was squarely presented that Barney Derrisaw was the father of plaintiff in lawful wedlock, and that said father of said legitimate child took an estate of curtesy under the Arkansas law, extended over the Indian Territory by act of Congress, as applicable, which meant a life estate in said allotment. Whether or not the surviving husband of a full-blood Indian allottee took an estate of curtesy in his wife's allotment at that time had not been decided by the Supreme Court of Oklahoma, or any other court, when said compromise was entered into and decree entered on October 25, 1913. In the case of Johnson v. Simpson, 40 Okl. 413, 139 P. 129, citing Armstrong v. Wood et al. (C. C.) 195 F. 137, it was held that the surviving husband was entitled to an estate of curtesy in his deceased Creek wife's allotment, of which she was seized during coverture, decided on February 24, 1914, and followed thereafter by Pierce v. Ellis, 51 Okl. 710, 152 P. 340; Finley v. American Trust Co., 51 Okl. 489, 151 P. 865; Bridges v. Wright et al., 56 Okl. 10, 155 P. 883; Morris v. Sweeney, 53 Okl. 163, 155 P. 537; Miles v. Miles, 73 Okl. 198, 175 P. 222; Kenoly et al. v. Hawley et al., 84 Okl. 120, 202 P. 494.

The Supreme Court of Oklahoma thus continued to sustain the claim of a surviving husband to a curtesy estate in his full-blood wife's allotment until the opinion was handed down on May 12, 1925, in Condren v. Marlin, 113 Okl. 259, 241 P. 826, rehearing being denied therein on December 1, 1925. On February 20, 1928, the Supreme Court of the United States in Marlin v. Lewallen, 276 U. S. 58, 48 S. Ct. 248, 72 L. Ed. 467, overruled such Oklahoma cases decided prior to Condren v. Marlin. Defendants' answer in equity No. 1970 went further and alleged that: "Upon the death of Fannie Derrisaw in the year 1905, intestate, unmarried and without issue (Fannie was a sister of plaintiff) the entire allotment of said Fannie Derrisaw, being the lands hereinbefore specifically described, passed to and vested in the father, Barney Derrisaw, and that neither Beeley Derrisaw nor Tuxey Derrisaw took any interest therein, and that her one-third interest in the allotment of her predeceased mother passed to and vested in her father, Barney Derrisaw, and that neither Beeley Derrisaw nor Tuxey Derrisaw took any right or interest in her one-third of the title to the allotment of Sarah Derrisaw deceased. That upon the death of Tuxey Derrisaw in the year 1911, his one-third interest in the fee of the lands allotted to his predeceased mother Sarah Derrisaw, passed to and vested in his father Barney Derrisaw, and that the complainant Beeley Derrisaw took no interest, right, estate or title therein or thereto. * * * "

The defendants in said answer pleaded that under the Arkansas law of descent and distribution, which was claimed to be in force in the Indian Territory, an allotment was neither an estate ancestral nor a new acquisition, and that upon the death of the allottee without child or surviving spouse the father inherited the entire estate or title in fee, basing said contention upon section 2522 of Mansfield's Digest of the Statutes of Arkansas, chapter 49, which question was never finally determined in this jurisdiction until the decision of the Supreme Court of the United States on April 26, 1915, in McDougal v. McKay, 237 U. S. 372, 35 S. Ct. 605, 59 L. Ed. 1001. In equity 1970 the validity of the deed executed to Smock by plaintiff's father, as an adult heir, and joined by plaintiff through his guardian, Hutchinson, and approved by the McIntosh county court under authority of section 22 of the Act of Congress of April 26, 1906 (34 Stat. 137, 145) was challenged on the ground the Act of Congress approved May 27, 1908 (35 Stat. 312), repealed section 22 of Act of April 26, 1906 (34 Stat. 137, 145), and that from and after date of Act of May 27, 1908, the minor's allotment neither in whole nor in part could be conveyed by a guardian except under authority of an order of county court having probate jurisdiction in a proceeding conducted under the statutes of Oklahoma authorizing county courts to order the sale of a minor's land. Defendants' answer in equity 1970 put this directly in issue, contending that section 22 of Act of April 26, 1906, was not repealed by Act of May 27, 1908. Under Wilson v. Morton, 29 Okl. 745, 119 P. 213, decided on November 14, 1911, Smock's deed was valid, operating to vest in him title to Barney Derrisaw's interest in the allotment unless Act of May 27, 1908, had repealed section 22 of Act of April 26, 1906. The Smock deed from the adult heir, joined in by Beeley Derrisaw's guardian and approved by the McIntosh court, was obtained in April 1912, and up to that date no decision by the Oklahoma Supreme Court or any federal court, or any other court, had held that section 22 of Act of April 26, 1906, had been repealed by Act of May 27, 1908. The first decision of the Supreme Court of Oklahoma directly on this

question was decided on October 2, 1917; two petitions for rehearing being filed and finally denied on October 23, 1919, more than two years thereafter. See Chupco v. Chapman, 76 Okl. 201, 170 P. 259. Whether Act of May 27, 1908, repealed section 22 of Act of April 26, 1906, was a question not free from difficulty. Nothing in the caption of Act of May 27, 1908, indicated that it repealed all or any part of Act of April 26, 1906, and there is no general repealing clause in Act of May 27, 1908. Certain sections of Act of May 27, 1908, amend by specific reference certain sections of Act of April 26, 1906. Section 8 of Act of May 27, 1908, 35 Stat. 315, amends section 23 of act of 1906, 34 Stat. 145; section 13 of said act, 35 Stat. 316, specifically amends section 11 of said act of 1906, 34 Stat. 141; and section 14 of said act 1908, 35 Stat. 316, amends section 13 of the 1906 act, 34 Stat. 142, but neither any general or any specific repealing clause, nor any specific amendment of section 22 of Act of April 26, 1906, is made. Section 6 of Act of May 27, 1908, 35 Stat. 313, upon which the decision of October 25, 1913, is based, date of the compromise decree in equity 1970, provided: "That the persons and property of minor allottees of the Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the jurisdiction of the probate courts of the State of Oklahoma."

Section 22 of the 1906 act was a specific provision applicable to a particular class of conveyances, to wit, allotments inherited by adult and infant heirs. The general rule is that a general act, unless clearly repugnant to a former special law, does not repeal the former law; such repeals by implication not being favored. On August 5, 1912, the United States Circuit Court of Appeals for the Eighth Circuit, in Truskett v. Closser, 198 F. 835, 839, had under consideration section 6 of Act of May 27, 1908, wherein it was contended that section 6 put in force in Oklahoma laws applicable to minors. This contention was rejected. The Circuit Court of Appeals said: "The appellants claim that the phrase 'except as otherwise specially provided by law 'refers to and includes the laws of Oklahoma. It is apparent, however, that the law therein mentioned must be federal law, and not state law."

It was contended by many that Act of May 27, 1908, authorized the District Courts to confer the right of majority upon minor allottees, and that in case of the marriage of such allottees it operated to remove the disability of minority as to the alienation of allotted land. That contention was rejected by the state and federal courts, Jefferson v. Winkler, 26 Okl. 653, 110 P. 755, the first appellate court passing on the question decided July 12, 1910. It was also contended that Act of May 27, 1908, was not retroactive and had no application to the sale of inherited lands either by a minor or an adult, except where the death occurred after the date of the act. Inheritance of allotments prior to statehood were involved in this case. The Attorney General of the United States on August 17, 1909 (see 27 Op. Attys. Gen. p. 530), rendered an opinion to the Secretary of the Interior in which he held that section 9 of the Act of May 27, 1908, 35 Stat. 315, was not retroactive and had no application to the conveyance of inherited lands by either adult or minor heirs where the allottee died prior to May 27, 1908. This question was not finally settled until the decision of the Supreme Court of the United States in Harris v. Bell, 254 U. S. 103, 41 S. Ct. 49, 65 L. Ed. 159, decided November 15, 1920, more than seven years after the compromise decree was entered in this case. Viewing the issues involved in equity 1970 and these interminable and difficult questions, I am unable to reach the conclusion that the judgment entered by Judge Campbell here complained of was void. I am unable to reach the conclusion there is any ground to find any fraud. A mistake of law is no ground for vacating such a decree. The fact that such a consent decree to be entered into by all parties would be on account of the fact that there was doubt as to the law and what would be the final judgment after the interminable litigation was not free from doubt. Courts favor good-faith compromises, and I am unable to find anything in this record showing the matter was not done in good faith, or that the parties thereto were not acting in good faith, or that the judge was imposed upon. If courts undertake to set aside agreements which are designed to stop litigation merely because one party misunderstood the law, it would be a fruitful source of litigation. Lewis v. Cooper, Cooke (Tenn.) 467; Stewart v. Stewart, 6 Cl. & F. 911, 7 Eng. Rep. (Reprint) 940, Macl. & R. 401, 9 Eng. Rep. (Reprint) 147; Jenner v. Jenner, 2 De G. F. & J. (Eng.) 359, 30 L. J. Ch. 201, 6 Jur. (N. S.) 1314, 3 L. T. 488, 9 W. R. 109. Compare In re Roberts, [1905] 1 Ch. (Eng.) 704, 74 L. J. Ch. 483, 93 L. T. (N. S.) 253.

In Kiefer Oil & Gas Co. v. McDougal, 229 F. 933, Ann. Cas. 1916D, 343, the United States Circuit Court of Appeals for the Eighth Circuit upheld a compromise agreement under which the appellant was compelled to pay appellee a bonus and one-fifth

of the royalty, although, as held by the court subsequent to the compromise agreement, McDougal had no right, title, or interest in the land or the oil and gas therein. In this case it is announced that, although the parties were mistaken as to the law, they were nevertheless bound by a contract of compromise where the matter was free from fraud and entered into in good faith.

I find that in this case it was free from fraud, that there were no false representations made, and that there is no evidence to show the judge was deceived.

■ Although there is no statute limiting the time within which a bill of review may be filed, yet it is held that a bill of review attacking a former judgment or decree for error of law appearing on the face of the record must be filed within the time allowed for appeal. Rothschild & Co. v. Marshall (C. C. A. 9th) 51 F.(2d) 897, 898; Taylor v. Easton (C. C. A. 8th) 180 F. 363, 364; Reed v. Stanly (C. C.) 89 F. 430, 431.

Other questions are raised to the effect that a full-blood Indian heir, as well as the allottee, is subject to the Oklahoma statute of limitations. See Act of Congress approved April 12, 1926 (44 Stat. 240); Harjo v. Empire Gas & Fuel Co. (C. C. A. 8) 28 F.(2d) 596; Schrimpscher v. Stockton, 183 U. S. 290, 22 S. Ct. 107, 46 L. Ed. 203; Self v. Prairie Oil & Gas Co. (C. C. A.) 28 F.(2d) 590; Deere v. Gilmore, 158 Okl. 217, 13 P. (2d) 162; Washington v. Bartlett, 158 Okl. 218, 13 P.(2d) 132; Givens v. Jones, 158 Okl. 124, 12 P.(2d) 892.

■ Where the fraud arose in procuring the decree, it must be attacked by an original bill and independent litigation, or a bill in the nature of a bill of review. Dowagiac Mfg. Co. v. McSherry Mfg. Co. (C. C. A. 6) 155 F. 524; United States v. Gleeson (C. C. A. 2) 90 F. 778; United States v. Beebe (C. C. A. 5) 92 F. 244.

In Hill v. Phelps (C. C. A.) 101 F. 650, 651, Judge Walter H. Sanborn held: "There are but three grounds upon which such a bill [a bill of review] can be sustained. They are (1) error of law apparent on the face of the decree and the pleadings and proceedings upon which it is based, exclusive of the evidence; (2) new matter which has arisen since the decree; and (3) newly-discovered evidence, which could not have been found and produced, by the use of reasonable diligence, before the decree was rendered."

In these cases distinction is made between a bill to impeach a decree for fraud and a bill of review. A bill of review based on newly discovered evidence must allege the evidence was unknown to the appellant and could not have been produced with due diligence upon the original trial of the case. In Thompson v. Maxwell Land Grant & Railway Co., 95 U. S. 391, 398, 24 L. Ed. 481, a consent decree against infant plaintiffs, entered upon a compromise agreement made on behalf of the infant plaintiffs by guardians ad litem, was involved. In the opinion it is said: "We do not think that the peculiarity of the case, however, takes it out of the ordinary rules that apply to a bill of review. A decree for carrying out a settlement and compromise of a suit is certainly not, of itself, erroneous. When made by consent, it is presumed to be made in view of the existing facts, and that these were in the knowledge of the parties. In the absence of fraud in obtaining it, such a decree cannot be impeached."

See, also, White v. Miller, 158 U. S. 128, 15 S. Ct. 788, 39 L. Ed. 921; Grier Bros. Co. v. Baldwin (C. C. A.) 265 F. 481.

If the so-called bill of review in this case be treated as an original or independent action attacking the decree of October 25, 1913, it is insufficient because it fails to allege fraud extrinsic to the matters tried. It should allege fraud practiced upon the plaintiff or the court in the manner of obtaining the judgment. United States v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93; Shelton v. Van Kleeck, 106 U. S. 532, 1 S. Ct. 491, 27 L. Ed. 269.

■ An infant who sues by his next friend or legal guardian is bound by the judgment or decree of a court having jurisdiction of the parties and subject-matter to the same extent he would have been if he were of full age. Fulsom v. Quaker Oil & Gas Co. (C. C. A.) 35 F.(2d) 84; Kansas City, Ft. S. & M. R. Co. v. Morgan (C. C. A.) 76 F. 429; Kingsbury v. Buckner, 134 U. S. 650, 10 S. Ct. 638, 33 L. Ed. 1047; Corker v. Jones, 110 U. S. 317, 4 S. Ct. 19, 28 L. Ed. 161.

The compromise agreement of October 20, 1913, upon which Judge R. E. Campbell entered a final decree in Beeley Derrisaw, an Infant, by R. B. Hutchinson, His Legal Guardian, Plaintiff, v. Charles B. Schaffer et al., equity No. 1970, having been authorized and approved by the county court of McIntosh county, the court having jurisdiction of the administration of the guardianship, and likewise approved and confirmed by the decree of the United States Court for the Eastern District, made and entered on October 25, 1913, the plaintiff, Beeley Derrisaw, although a minor at the time the compromise was made

and approved by said courts, was and is bound thereby, in the absence of fraud; it being well settled that a guardian, with the approval of the court, has power to compromise a minor's claim to an interest in land. Carter Oil Co. v. Fleming, 117 Okl. 39, 245 P. 833; Verdine v. Cosden & Co., 96 Okl. 52, 220 P. 329; Hagy v. Avery, 69 Iowa, 434, 29 N. W. 409; Thompson v. Maxwell Land Grant & R. Co., 168 U. S. 451, 18 S. Ct. 121, 42 L. Ed. 539; Thompson v. Maxwell Land Grant & R. Co., 95 U. S. 391, 24 L. Ed. 481; Walsh v. Walsh, 116 Mass. 377, 17 Am. Rep. 162; Gusdofer v. Gundy, 72 Miss. 312, 16 So. 432; Cannon v. Hemphill, 7 Tex. 184; Gunter v. Fox, 51 Tex. 383; Hollis v. Dashiell, 52 Tex. 187.

The fact that the plaintiff was a duly enrolled full-blood Creek Indian did not interfere with the jurisdiction of the county court in cause 1970. Harris v. Bell, 254 U. S. 103, 41 S. Ct. 49, 65 L. Ed. 159; Chupco v. Chapman, 76 Okl. 201–210, 170 P. 259; United States v. Gypsy Oil Co. (C. C. A.) 10 F.(2d) 487; Pluto Oil & Gas Co. et al. v. Miller, 95 Okl. 222, 219 P. 303; Gypsy Oil Co. v. Clinton et al., 98 Okl. 282, 220 P. 587; Fulsom v. Quaker Oil & Gas Co. (C. C. A.) 35 F.(2d) 84; Wiley v. Edmondson, 43 Okl. 1, 133 P. 38; Verdine v. Cosden & Co., 96 Okl. 52, 220 P. 329; Carter Oil Co. v. Fleming, 117 Okl. 39, 245 P. 833; Wiley, Guardian, v. Gypsy Oil Co., 115 Okl. 120, 242 P. 189.

I find that no fraud was practiced upon Judge R. E. Campbell in order to induce him to enter the judgment herein complained of; and find generally against the plaintiff on the allegations herein contained.

I conclude that under the law a decree should be entered in favor of the defendant, and that the amended bill should be dismissed with prejudice. Such decree will be entered at Muskogee on October 26, 1934.